# D. H. HOLMES CO., LTD. *v.* McNAMARA, SECRETARY OF REVENUE AND TAXATION OF LOUISIANA

No. 87–267.   Argued March 22, 1988—Decided May 16, 1988

REHNQUIST, C. J., delivered the opinion for a unanimous Court.

*Andrew Rinker, Jr.*, argued the cause for appellant. With him on the briefs were *William F. Grace, Jr.*, and *Kenneth J. Servay*.

*Robert G. Pugh* argued the cause for appellee. With him on the brief was *Robert G. Pugh, Jr.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the American Retail Federation by *Maryann B. Gall;* for the Committee on State Taxation of the Council of State Chambers of Commerce by *Jean A. Walker* and *Paul H. Frankel;* for the National Association of Catalog Showroom Merchandisers by *Richard B. Kelly* and *Thomas P. Mohen;* and for R. R. Donnelley & Sons Co. et al. by *Rex E. Lee, Michael A. Nemeroff, Carter G. Phillips*, and *Mark D. Hopson*.

Briefs of *amici curiae* urging affirmance were filed for the Multistate Tax Commission by *Alan H. Friedman;* and for the National Governors' Association et al. by *Benna Ruth Solomon* and *Gregory Evers May*.

*George S. Isaacson, Martin I. Eisenstein*, and *Robert J. Levering* filed a brief for the Direct Marketing Association as *amicus curiae*.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Appellant, a Louisiana corporation, challenges the State's imposition of a use tax on catalogs printed at appellant's direction outside Louisiana and shipped to prospective customers within the State. The Louisiana Court of Appeal found that this application of the use tax did not violate the Commerce Clause of the Federal Constitution. We affirm.

I

Appellant D. H. Holmes Company, Ltd., is a Louisiana corporation with its principal place of business and registered office in New Orleans. Holmes owns and operates 13 department stores in various locations throughout Louisiana that employ about 5,000 workers. It has approximately 500,000 credit card customers and an estimated 1,000,000 other customers within the State.

In 1979–1981, Holmes contracted with several New York companies for the design and printing of merchandise catalogs. The catalogs were designed in New York, but were actually printed in Atlanta, Boston, and Oklahoma City. From these locations, 82% of the catalogs were directly mailed to residents of Louisiana; the remainder of the catalogs were mailed to customers in Alabama, Mississippi, and Florida, or were sent to Holmes for distribution at its flagship store on Canal Street in New Orleans. The catalogs were shipped free of charge to the addressee, and their entire cost (about $2 million for the 3-year period), including mailing, was borne by Holmes. Holmes did not, however, pay any sales tax where the catalogs were designed or printed.

Although the merchandise catalogs were mailed to selected customers, they contained instructions to the postal carrier to leave them with the current resident if the addressee had moved, and to return undeliverable catalogs to Holmes' Canal Street store. Holmes freely concedes that the purpose of the catalogs was to promote sales at its stores and to

instill name recognition in future buyers. The catalogs included inserts which could be used to order Holmes' products by mail.

The Louisiana Department of Revenue and Taxation, of which appellee is the current Secretary, conducted an audit of Holmes' tax returns for 1979–1981 and determined that it was liable for delinquent use taxes on the value of the catalogs. The Department of Revenue and Taxation assessed the use tax pursuant to La. Rev. Stat. Ann. §§ 47:302 and 47:321 (West 1970 and Supp. 1988), which are set forth in the margin.[1] Together, §§ 47:302(A)(2) and 47:321(A)(2) impose a use tax of 3% on all tangible personal property used in Louisiana. "Use," as defined elsewhere in the statute, is the exercise of any right or power over tangible personal property incident to ownership, and includes consumption, distribution, and storage. See La. Rev. Stat. Ann. §§ 47:301(18) and (19) (West 1970 and Supp. 1988). The use tax is designed to

---

[1] "§ 47:302. Imposition of tax

"A. There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein, the levy of said tax to be as follows:

.          .          .          .          .

"(2) At the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided there shall be no duplication of the tax."

"§ 47:321. Imposition of tax

"A. In addition to the tax levied by R. S. 47:302(A) and collected under the provisions of Chapter 2 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950, there is hereby levied an additional tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property . . . the levy of said tax to be as follows:

.          .          .          .          .

"(2) At the rate of one percent of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state, provided that there shall be no duplication of the tax."

compensate the State for sales tax that is lost when goods are purchased out-of-state and brought for use into Louisiana, and is calculated on the retail price the property would have brought when imported.

When Holmes refused to pay the use tax assessed against it, the State filed suit in Louisiana Civil District Court to collect the tax.[2] In response to the State's complaint, Holmes answered that it owed no tax under §§ 47:302 and 47:321 as properly applied, a position Holmes claimed was reinforced by La. Rev. Stat. Ann. § 47:305(5) (West 1970).[3] Holmes also contended that the use tax violated the Commerce Clause of the Federal Constitution.

After a 2-day bench trial, the District Court determined that the distribution of the catalogs in Louisiana was "intended for the use of D. H. Holmes in increasing its sales to potential customers who are residents of Louisiana." No. 83–15523 (La. Civ. Dist. Ct., July 19, 1985), App. to Juris. Statement 12A, 21A. The court also found that "[o]nce the catalogs reach the residences of the prospective customers to whom they are addressed, Louisiana taxing

---

[2] As originally filed in Louisiana Civil District Court, the State's complaint included a claim for delinquent sales taxes on candy sold by Holmes. The State apparently reached an acceptable compromise with Holmes, and the Civil District Court granted a joint motion by the parties to dismiss without prejudice the candy sales tax issue. That issue is thus no longer a part of this case.

[3] As then codified this section provided:

"§ 47:305. Exclusions and exemptions from the tax

.        .        .        .

"(5) It is not the intention of this Chapter to levy a tax upon articles of tangible personal property imported into this state, or produced or manufactured in this state, for export; nor is it the intention of this Chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state."

authority reaches the resting place of the catalogs," *id.*, at 22A, and concluded that the application of the use tax statutes did not unconstitutionally burden interstate commerce. The court then ordered Holmes to pay the State $49,937.03, plus interest and attorney's fees, which was the amount the parties stipulated as due on the use tax.

The Louisiana Court of Appeal, Fourth Circuit, affirmed the judgment of the trial court. 505 So. 2d 102 (1987). After reviewing the Louisiana use tax statute, the Court of Appeal found that the catalog distribution was properly subjected to the tax, since once the catalogs landed in Louisiana mailboxes they left the stream of interstate commerce and became part of the property mass of the State. Furthermore, "[d]istribution of the catalogs certainly constitutes 'use' by Holmes under the statute and is subject to the tax." *Id.*, at 105. Turning to the federal question in the case, the Court of Appeal analyzed the use tax under the test we articulated in *Complete Auto Transit, Inc.* v. *Brady*, 430 U. S. 274 (1977), and found that it did not violate the Commerce Clause.

The Louisiana Supreme Court denied discretionary review. 506 So. 2d 1224 (1987). We noted probable jurisdiction, pursuant to 28 U. S. C. § 1257(2). 484 U. S. 923 (1987).

## II

The Commerce Clause of the Constitution, Art. I, § 8, cl. 3, provides that Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Even where Congress has not acted affirmatively to protect interstate commerce, the Clause prevents States from discriminating against that commerce. The "distinction between the power of the State to shelter its people from menaces to their health or safety and from fraud, even when those dangers emanate from in-

terstate commerce, and its lack of power to retard, burden or constrict the flow of such commerce for their economic advantage, is one deeply rooted in both our history and our law." *H. P. Hood & Sons* v. *Du Mond*, 336 U. S. 525, 533 (1949).

One frequent source of conflict of this kind occurs when a State seeks to tax the sale or use of goods within its borders. See, *e. g.*, *Colonial Pipeline Co.* v. *Traigle*, 421 U. S. 100 (1975); *Memphis Natural Gas Co.* v. *Stone*, 335 U. S. 80 (1948). This recurring dilemma is exemplified in what has come to be the leading case in the area, *Complete Auto Transit, Inc.* v. *Brady, supra.* In *Complete Auto*, Mississippi imposed a tax on appellant's business of in-state transportation of motor vehicles manufactured outside the State. We found that the State's tax did not violate the Commerce Clause, because appellant's activity had a substantial nexus with Mississippi, and the tax was fairly apportioned, did not discriminate against interstate commerce, and was fairly related to benefits provided by the State. *Id.*, at 287.

This four-part formulation has since been used to evaluate the validity of state taxes vis-à-vis the Commerce Clause in a number of contexts. Two Terms ago, for instance, we upheld a Florida tax on aviation fuel purchased within the State, finding that all four of the *Complete Auto* criteria were satisfied. *Wardair Canada Inc.* v. *Florida Dept. of Revenue*, 477 U. S. 1 (1986). The *Complete Auto* test has also been employed to test the constitutionality of business and occupation taxes, *Department of Revenue of Washington* v. *Association of Washington Stevedoring Cos.*, 435 U. S. 734 (1978); mineral severance taxes, *Commonwealth Edison Co.* v. *Montana*, 453 U. S. 609 (1981); and the taxation of income received by an out-of-state corporation from its in-state subsidiaries, *Mobil Oil Corp.* v. *Commissioner of Taxes of Vermont*, 445 U. S. 425 (1980).

*Complete Auto* abandoned the abstract notion that interstate commerce "itself" cannot be taxed by the States. We

recognized that, with certain restrictions, interstate commerce may be required to pay its fair share of state taxes. Accordingly, in the present case, it really makes little difference for Commerce Clause purposes whether Holmes' catalogs "came to rest" in the mailboxes of its Louisiana customers or whether they were still considered in the stream of interstate commerce. This distinction may be of some importance for other purposes (in determining, for instance, whether a "taxable moment" has occurred, see 505 So. 2d, at 105), but for Commerce Clause analysis it is largely irrelevant.

Holmes argues that Louisiana's assessment against its merchandise catalogs is, in essence, a tax on the mere presence of goods within the State. This contention was expressly rejected by the Louisiana Court of Appeal's finding that the *distribution* of the catalogs constituted use under §§ 47:302 and 47:321. We accept this construction of state law, and thus see no merit in the argument that Louisiana has attempted to tax only the existence of goods within the State.

In the case before us, then, the application of Louisiana's use tax to Holmes' catalogs does not violate the Commerce Clause if the tax complies with the four prongs of *Complete Auto.* We have no doubt that the second and third elements of the test are satisfied. The Louisiana taxing scheme is fairly apportioned, for it provides a credit against its use tax for sales taxes that have been paid in other States. See La. Rev. Stat. Ann. § 47:303(A) (West 1970) ("A credit against the use tax imposed by this Chapter shall be granted to taxpayers who have paid a similar tax upon the sale or use of the same tangible personal property in another state"); § 47:302(A)(2) (instructing that "there shall be no duplication of the tax"); § 47:321(A)(2) (West Supp. 1988) (same). Holmes paid no sales tax for the catalogs where they were designed or printed; if it had, it would have been eligible for a credit against the use tax exacted. Similarly, Louisiana im-

posed its use tax only on the 82% of the catalogs distributed in-state; it did not attempt to tax that portion of the catalogs that went to out-of-state customers.

The Louisiana tax structure likewise does not discriminate against interstate commerce. The use tax is designed to compensate the State for revenue lost when residents purchase out-of-state goods for use within the State. It is equal to the sales tax applicable to the same tangible personal property purchased in-state; in fact, both taxes are set forth in the same sections of the Louisiana statutes. See La. Rev. Stat. Ann. §§ 47:302 and 47:321 (West 1970 and Supp. 1988).

*Complete Auto* requires that the tax be fairly related to benefits provided by the State, but that condition is also met here. Louisiana provides a number of services that facilitate Holmes' sale of merchandise within the State: It provides fire and police protection for Holmes' stores, runs mass transit and maintains public roads which benefit Holmes' customers, and supplies a number of other civic services from which Holmes profits. To be sure, many others in the State benefit from the same services; but that does not alter the fact that the use tax paid by Holmes, on catalogs designed to increase sales, is related to the advantages provided by the State which aid Holmes' business.

Finally, we believe that Holmes' distribution of its catalogs reflects a substantial nexus with Louisiana. To begin with, Holmes' contention that it lacked sufficient control over the catalogs' distribution in Louisiana to be subject to the use tax verges on the nonsensical. Holmes ordered and paid for the catalogs and supplied the list of customers to whom the catalogs were sent; any catalogs that could not be delivered were returned to it. Holmes admits that it initiated the distribution to improve its sales and name recognition among Louisiana residents. Holmes also has a significant presence in Louisiana, with 13 stores and over $100 million in annual sales in the State. See App. 68–69, 98. The distribution of

catalogs to approximately 400,000 Louisiana customers was directly aimed at expanding and enhancing its Louisiana business. There is "nexus" aplenty here.

Holmes and several *amici* argue that Holmes' posture here closely resembles the predicament of the mail-order business we confronted in *National Bellas Hess, Inc.* v. *Department of Revenue of Illinois*, 386 U. S. 753 (1967). In *National Bellas Hess*, we held that the State of Illinois could not, consistently with the Commerce Clause, compel an out-of-state mail-order company to collect a use tax on purchases of goods by Illinois residents when the seller's only connection with its Illinois customers was by mail or common carrier. Holmes apparently views its catalog distribution as analogous to the mail-order solicitation in *National Bellas Hess*. This argument ignores, however, Holmes' significant economic presence in Louisiana, its many connections with the State, and the direct benefits it receives from Louisiana in conducting its business. We thus see little similarity between the mail-order shipments in *National Bellas Hess* and Holmes' activities in this case.

We find Holmes' activities much closer to those considered in *National Geographic Society* v. *California Board of Equalization*, 430 U. S. 551 (1977). *National Geographic* involved the operation of two California offices by a national magazine devoted solely to soliciting advertising for the magazine. California nonetheless applied its use tax, which required every retailer engaged in business in the State to collect a tax from its purchasers, on the magazine's mail-order activities. We determined that the imposition of the tax did not violate the Commerce Clause, since the magazine's "maintenance of the two offices in California and activities there adequately establish[ed] a relationship or 'nexus' between the [magazine] and the State" sufficient to support the tax. *Id.*, at 556. This conclusion applies *a fortiori* here,

since Holmes' connection with Louisiana far exceeds that of the magazine with California in *National Geographic*.

Because Louisiana's imposition of its use tax on Holmes does not violate the Commerce Clause, the judgment of the Louisiana Court of Appeal is

*Affirmed.*