809 So.2d 246 (2001)
STATE of Louisiana and Secretary of the Department of Revenue and Taxation
v.
QUANTEX MICROSYSTEMS, INC.
No. 2000 CA 0307.
Court of Appeal of Louisiana, First Circuit.
July 3, 2001.
*247 David W. Clark, Russell J. Stutes, Jr., Lake Charles, Counsel for Plaintiffs/Appellants, State of Louisiana and Secretary of the Department of Revenue and Taxation.
Paul S. West, Baton Rouge, John E. Gaggini, Thomas H. Donohoe, John A. Biek, Jane Wells May, Chicago, IL, Counsel for Amicus Curiae, Gateway, Inc.
Before: GONZALES, FOGG, PARRO, FITZSIMMONS, and PETTIGREW, JJ.
GONZALES, J.
In this appeal, the State of Louisiana and the Secretary of the Department of Revenue and Taxation (Department) challenge a judgment dismissing their claim for unpaid taxes against Quantex Microsystems, Inc. (Quantex), a vendor of computer products.

FACTUAL AND PROCEDURAL BACKGROUND
Quantex, a New York corporation, with its principal place of business in New Jersey, sells computer products via the mail, the telephone, and the internet. It solicits business through national publications and on the internet but does not specifically direct any advertisements to Louisiana. Quantex has no offices, property, bank accounts, or direct employees in Louisiana. In the years 1995 through 1997, Quantex made computer sales of approximately $7,480,000.00 for delivery in Louisiana. As part of the limited warranty provided with the purchase of its computer products, Quantex represents to its customers that it may, at its sole discretion, provide on-site service to its customers for the replacement of defective hardware parts for one year from the date of purchase. According to Quantex, however, this service is provided by the manufacturer of the computer products and not by Quantex.
On December 30, 1997, the Department filed suit against Quantex, seeking payment of unpaid use, income, and franchise taxes for tax years 1994, 1995, 1996, and 1997, plus penalties and interest. The Department alleged Quantex had "established a physical presence in the State of Louisiana" *248 by providing for "repairs, service and/or support for products purchased for use in Louisiana through the use of agents, employees and/or independent contractors operating in Louisiana ...." Quantex answered the suit, denying that it had a physical presence in Louisiana.
On September 9, 1999, Quantex filed a motion for summary judgment, seeking dismissal of the Department's claims for sales and use taxes.[1] A hearing on the motion was held on October 25, 1999, and on October 26, 1999, the trial court signed a judgment, granting Quantex's motion and dismissing the Department's demands against Quantex. The Department appeals from the judgment, contending the trial court erred in finding that "an out-of-state corporation's use of independent contractors to provide on-site computer repair services in Louisiana cannot constitute [a] substantial nexus" to support state taxation.

PRELIMINARY MATTERS
Before addressing the merits of this appeal, we address three preliminary matters: a motion to strike filed by Quantex, a motion to file textual material by the Department, and a motion to strike filed by the Department. This court previously referred these motions to the merits of the case.

A. Quantex's Motion to Strike and the Department's Motion to File Textual Material
After this appeal was filed, Quantex filed a motion to strike two exhibits attached to the Department's appellate brief. In response, the Department filed a motion to file the two exhibits with this court as textual material. The first exhibit is a copy of Bulletin 95-1 entitled "Multistate Tax Commission Issues Nexus Program Bulletin," issued by the Multistate Tax Commission on December 20, 1995; the second exhibit is a copy of an article taken from a computer database entitled "CCH TAX DAY: STATE, March 23, 2000, MISCELLANEOUS TAXES, All StatesMiscellaneous Taxes: Nexus Disputes Cause Last-Minute Collapse with E-Commerce Commission."
Rule 2-15.4 of the Uniform Rules, Louisiana Courts of Appeal, provides, in pertinent part, as follows:
(a) Textual Materials. A book, treatise, or other textual material not conveniently available to the court, used as authority during argument by counsel, shall, on request of court, be deposited with the court until the case is decided. By leave of court, a photocopy of the pertinent material may be substituted in lieu of the book, the treatise, or other textual material.
The two exhibits sought to be introduced by the Department are not evidentiary in nature. They are not being offered to prove a fact at issue in this case; rather, the Department offers them as support for its legal argument that in-state repair service by out-of-state computer vendors is sufficient to create the nexus necessary to support state taxation. The exhibits qualify as "textual materials" within the meaning of Rule 2-15.4(a). However, Rule 2-15.4(a) only allows the deposit of such textual materials when requested by the appellate court. Contrary to implications made by the third and fifth circuit courts of appeal in Dugas v. Travelers Insurance Company, 613 So.2d 1112, 1113 (La.App. 3 Cir.1993), and Graver v. Monsanto Company, Inc., 97-799 (La.App. *249 5 Cir. 6/30/98), 716 So.2d 435, 437, rev'd on other grds, 98-2616 (La.1/8/99), 734 So.2d 647, Rule 2-15.4 does not allow a party to request leave of court to deposit textual materials with an appellate court.
This court has not requested that the exhibits at issue be deposited with this court. Thus, we will grant Quantex's motion to strike the two exhibits from the Department's original appellate brief, and we will deny the Department's motion to file the exhibits as textual material.

B. The State's Motion to Strike
On August 30, 2000, this court signed an order allowing Gateway, Inc. to file an amicus curiae brief and attached exhibits. The Department subsequently filed a motion to strike several exhibits attached to the amicus curiae brief. The exhibits challenged by the Department are: (1) an affidavit by Thomas J. Curry, Vice President of Circulation and Marketing with National Bellas Hess, Inc. from 1954 through 1969, which was allegedly part of the record in Quill Corporation v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992); (2) an affidavit by Arnold Miller, Treasurer of Quill Corporation, which was allegedly part of the record in Quill Corporation; (3) excerpts from an amicus curiae brief filed by the Multistate Tax Commission in Quill Corporation; and (4) excerpts of briefs filed by the State of North Dakota and Quill Corporation before the district court in Quill Corporation.
Regarding the affidavits by Thomas J. Curry and Arnold Miller, we note these exhibits are being offered by Gateway, Inc. for the purpose of establishing facts regarding the warranties offered by computer vendors involved in National Bellas Hess, Inc. v. Department of Revenue of State of Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), and the Quill Corporation case. The brief of an amicus curiae (or attachments thereto) cannot be used as a vehicle to present additional evidence or new evidence to an appellate court. Bouterie v. Crane, 604 So.2d 1051, 1052 (La.App. 5 Cir.1992), rev'd on other grds, 616 So.2d 657 (La. 1993). The affidavits were not presented to the trial court in this matter. Thus, we are precluded from considering them. Regarding excerpts from the briefs filed in the Quill Corporation case, they are being offered in support of argument only and will not be stricken.
Thus, we will grant in part, and deny in part, the Department's motion to strike exhibits attached to Gateway, Inc.'s brief.
We now turn to the merits of the Department's appeal.

SUMMARY JUDGMENT
The Department argues the trial court erred in granting Quantex's motion for summary judgment, based on its conclusion that "pursuant to the U.S. Supreme Court decision in Quill Corporation..., Quantex Microsystems, Inc. lacks the substantial nexus with Louisiana required for the State to be able [to] impose taxes."
A motion for summary judgment is a procedural device used to avoid a full-scale trial, where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. It should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
The summary judgment procedure is designed to secure the just, speedy *250 and inexpensive determination of every action and is now favored. La. C.C.P. art. 966. The initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. arts. 966 and 967. Appellate courts review summary judgments de novo under the same criteria that governs the trial court's consideration of whether summary judgment is appropriate. Bergeron v. Williams, 99-0886, 99-0887 (La.App. 1 Cir. 5/12/00), 764 So.2d 1084, 1087, writ denied, 00-1697 (La.9/15/00), 768 So.2d 1281.

APPLICABLE LOUISIANA TAXATION LAW
Because the applicable substantive law determines the materiality of facts in a summary judgment setting, we now turn to a discussion of the Louisiana taxation law applicable to this case. J. Ray McDermott, Inc. v. Morrison, 96-2337 (La. App. 1 Cir. 11/7/97), 705 So.2d 195, 203, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754.
Generally, Louisiana imposes a sales tax on the retail sale in this state of each item of tangible personal property. La. R.S. 47:302. In addition to a sales tax, Louisiana imposes a use tax on items purchased in other states, but brought into Louisiana for use, consumption, distribution, and storage for use and consumption. La. R.S. 47:302. A use tax ordinarily serves to complement the sales tax of a state by eliminating the incentive to make major purchases in states with lower sales taxes. McDermott, 705 So.2d at 203. Every dealer located outside the state making sales of tangible personal property for distribution, storage, use, or other consumption in Louisiana shall, at the time of the sales, collect the applicable tax from the purchaser. La. R.S. 47:304(B). Any dealer who neglects, fails, or refuses to collect the tax shall be liable for and pay the tax himself. La. R.S. 47:304(C).
The Louisiana sales/use tax law is not intended to levy a tax on interstate commerce; however, our law is intended to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state. This includes the collection of taxes on sales of tangible personal property that are promoted through the use of catalogs and other means of sales promotion and for which federal legislation or federal jurisprudence enables the enforcement of the use tax law upon the conduct of such business. La. R.S. 47:305(E)(1).
Article I, § 8, cl. 3, of the United States Constitution, known as the Commerce Clause, authorizes Congress to regulate commerce among the several states. Despite this express grant of power to Congress, the United States Supreme Court has consistently held that this language contains a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject. Oklahoma Tax Commission v. Jefferson Lines, Inc., 514 U.S. 175, 179, 115 S.Ct. 1331, 1335, 131 L.Ed.2d 261 (1995). In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 *251 L.Ed.2d 326 (1977), the Supreme Court set forth a four-part test to assess the validity of state taxes under the Commerce Clause. Under the Complete Auto test, a state tax will be upheld in the face of a Commerce Clause challenge so long as the "tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." Complete Auto, 430 U.S. at 279, 97 S.Ct. at 1079; Columbia Gulf Transmission Co. v. Broussard, 94-1650 (La.4/10/95), 653 So.2d 522, 524, cert. denied, 516 U.S. 908, 116 S.Ct. 276, 133 L.Ed.2d 196 (1995).
At issue in this appeal is whether Quantex's activity in Louisiana has a "substantial nexus" with Louisiana to warrant the imposition of taxation. In National Bellas Hess, 386 U.S. at 758, 87 S.Ct. at 1392, the Supreme Court established a bright-line rule that "a vendor whose only contacts with the taxing State are by mail or common carrier lacks the `substantial nexus' required by the Commerce Clause." Quill Corporation, 504 U.S. at 311, 112 S.Ct. at 1912. Under National Bellas Hess, such vendors are free from state-imposed duties to collect sales and use taxes. Quill Corporation, 504 U.S. at 315, 112 S.Ct. at 1914. However, if such a vendor maintains a "physical presence" in the taxing state, the "substantial nexus" requirement is fulfilled.
The boundaries of the "physical presence" requirement have been the subject of much judicial debate in the years since the National Bellas Hess, Quill Corporation, and Complete Auto decisions. See In re Appeal of Intercard, Inc., 270 Kan. 346, 14 P.3d 1111 (2000) (and cases discussed therein); Vento, Carol Schultz, "Sufficient Nexus for State to Require Foreign Entity to Collect State's Compensating, Sales, or Use TaxPost-Complete Auto Transit Cases," 71 ALR 5th 671, 1999 WL 729013 (1999); 8 J. Multistate Tax'n 58, Transitory Physical Presence as Nexus: What is "More Than the Slightest Presence?," (May/June 1998). However, the crucial factor governing nexus is whether the activities performed in the taxing state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in the taxing state. Tyler Pipe Industries, Inc. v. Washington, 483 U.S. 232, 250, 107 S.Ct. 2810, 2821, 97 L.Ed.2d 199 (1987).
In granting summary judgment in favor of Quantex in this case, the trial court determined the existence of independent contractors performing warranty work in the taxing state was insufficient to establish the necessary physical presence to support state taxation. In our de novo review, we determine the trial court erred in finding no genuine issues of material fact in dispute.
Quantex's service guide clearly represents to buyers of its computer products that it may provide service for defective hardware parts for one year from the date of purchase. This warranty represented to the purchasers of $7,480,000.00 worth of Quantex computer products sold for delivery in Louisiana during the relevant period that representatives of Quantex may have been physically present in Louisiana performing this service.
In discovery responses provided to the Department in December of 1998, Quantex first claimed that, since January 1, 1994, it had used an independent contractor, Vanstar Corporation, to perform warranty work. In a supplemental discovery response provided to the Department in October of 1999, Quantex denied responsibility for or involvement in the providing of service, instead claiming that Fountain Technologies, Inc., the alleged manufacturer *252 of the computer products sold by Quantex, was responsible for handling service. According to Quantex,
On site service is handled by the manufacturer of the computer system sold by Quantex, Fountain Technologies, Inc., whose headquarters is in New Jersey. Fountain Technologies, Inc. has no office in Louisiana. While the on site service is Fountain's responsibility, Fountain does not directly perform any of the on site service on systems sold by Quantex to Louisiana residents.
Fountain includes an amount in the purchase price of each computer system sold to Quantex, which amount serves to reimburse Fountain for arranging on site service. Quantex does not pay for such on site services calls except for the amount paid to Fountain Technologies, Inc. as described above.
The company Fountain Technologies, Inc. used to provide such service was Van Star. In December, 1998, Fountain Technologies, Inc. entered into an agreement with Warranty Corporation of America which is the company they use for on site service today. Warranty Corporation of America is located at 3110 Crossing Park Road, Norcross, Georgia.
The above responses indicate there are disputed factual issues regarding whether Quantex itself provided on-site service during the relevant periods or whether on-site service was provided by Fountain Technologies, Inc. Further, factual issues remain regarding the extent of the on-site service actually performed during the relevant period and whether that activity was significantly associated with Quantex's ability to establish and maintain a market in Louisiana. Further, a review of federal and state jurisprudence indicates the parameters of the "physical presence" requirement have not been sufficiently developed to determine whether on-site service performed by independent contractors on behalf of Quantex or Fountain Technologies, Inc., or the extent of such service, would be adequate to support taxation in this case. Additional discovery on these issues will be necessary on remand.

DECREE
For the foregoing reasons, the motion to strike filed by Quantex is GRANTED, and the motion to file textual material filed by the Department is DENIED. The motion to strike filed by the Department is GRANTED IN PART and DENIED IN PART. The affidavits of Thomas J. Curry and Arnold Miller are stricken. In all other respects, the Department's motion to strike is DENIED.[2]
Further, the judgment of the trial court is REVERSED, and this matter is REMANDED for further proceedings consistent with this opinion. Costs of this appeal are assessed to Quantex.
FOGG, J., dissents and assigns reasons.
PARRO, J., concurs.
FOGG, J. dissenting.
I respectfully dissent. The majority reverses this grant of summary judgment upon a determination that "disputed factual issues" exist concerning (1) "whether Quantex itself provided on-site service during the relevant periods, or whether on-site service provided by Fountain Technologies, Inc.;" (2) "the extent of the on-site service actually performed during the relevant period;" and (3) whether the on-site *253 service "was significantly associated with Quantex's ability to establish and maintain a market in Louisiana." For the following reasons, I believe that none of these constitute "genuine issues of material fact" and that, once the undisputed material facts are analyzed under the pertinent jurisprudence, Quantex is entitled to judgment as a matter of law.
A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. LSA-C.C.P. art. 966; Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606. Therefore, the determination of the materiality of a particular fact must be made in light of the relevant substantive law.
Article I, § 8, cl. 3, of the United States Constitution authorizes Congress to "regulate Commerce with foreign Nations, and among the several States." The Commerce Clause prohibits states from taxing mail order vendors and other out-of-state vendors unless there is a "substantial nexus" between the business activity being taxed and the state imposing the tax. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); National Bellas Hess, Inc. v. Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). The applicable substantive law is fully discussed in the case of Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the most recent United States Supreme Court case that addresses the right of a state to collect sales and use taxes from an out-of-state vendor. Quill held that substantial nexus means that the out-of-state vendor must maintain a physical presence in the taxing state. Maintaining property or employees in the taxing state is required to constitute a physical presence. This physical presence is a bright-line rule for the imposition of sales and use taxes. Quill Corp., 504 U.S. at 311, 112 S.Ct. at 1912. Therefore, in order for Louisiana to impose sales and use taxes on Quantex, Quantex must have a substantial nexus in this state in the form of a physical location or employees in the state.
Initially, the majority finds that Quantex's answers and supplemental answers to interrogatories are inconsistent, and therefore, raise a genuine issue of material fact. I disagree with this conclusion for two reasons. First, reviewing the interrogatories in question, I find no inconsistency.[1] *254 Rather, reading these answers together I believe the supplemental answer simply clarifies the original answer. Read together they state that Quantex does not contract with any person to provide service or warranty work in the State of Louisiana. Neither answer indicates that Quantex itself may have "provided on-site service during the relevant periods" as concluded by the majority; rather, Quantex consistently states that it did not provide such service. Second, even if the answers are determined to be conflicting, they could only conflict in stating which company, Vanstar or Warranty, handled service. Critical to Louisiana's right to tax is the presence of a company's property or personnel within the state. Quill, 504 U.S. at 311, 112 S.Ct. at 1912. Under either scenario, neither property nor employees of Quantex were located in Louisiana. Therefore, under either factual scenario, Quantex had no physical presence in Louisiana; a determination of whether Vanstar or Warranty handled the on-site service is not material.
The majority also finds that summary judgment is not proper because a genuine issue of material fact exists because the record does not disclose the extent of the on-site service actually performed during the relevant period. The extent of on-site service that occurs in the State of Louisiana is irrelevant to a determination of taxability in this case because there is no evidence at all before the trial court that any of the service was performed by employees of Quantex. Without such evidence, Quill mandates a finding of no taxability. The frequency of service provided by another company is not material to this case.
Finally, the majority finds that an issue of material fact exists as to whether the on-site service was significantly associated with Quantex's ability to establish and maintain a market in Louisiana. Under Quill, we should not reach this issue as Quantex has no physical presence in Louisiana. In the case of Tyler Pipe Industries, Inc. v. Washington, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), cited by the majority, Tyler Pipe had a physical presence in the State of Washington as it had sales representatives in that state. Any facts that would determine whether on-site service by third parties was significantly associated with Quantex's ability to establish and maintain a market in Louisiana are irrelevant to an analysis of taxability under the Commerce Clause, and therefore, are not material facts.
Considering the analysis used to determine taxability of out-of-state vendors under the Commerce Clause as set forth in Quill, the above factual questions do not constitute genuine issues of material fact that would preclude summary judgment. I believe Quantex made a prima facie showing that the motion should be granted. See LSA-C.C.P. art. 966(C)(2); Gleason v. Nuco, Inc., 99-2954 (La.App. 1 Cir. 12/22/00), 774 So.2d 1240. In opposition to the motion for summary judgment, the Department of Revenue and Taxation placed no evidence in the record that *255 raised an issue of material fact or showed that Quantex is not entitled to judgment as a matter of law. See LSA-C.C.P. art. 967. Therefore, in this case as in the Quill case, summary judgment was properly granted in favor of the vendor as the taxing state failed to show that the vendor had a substantial nexus with the state, as required by the Commerce Clause. For the foregoing reasons, I would affirm the judgment of the trial court.
NOTES
[1] Quantex made no argument regarding summary judgment as to the Department's claims for franchise and income taxes.
[2] The parties are not precluded from introducing the stricken exhibits before the trial court upon remand of this case.
[1] On December 28, 1998, Quantex responded to the following interrogatory propounded by the Department of Taxation and Revenue:

Interrogatory No. 2
Have you contracted with any person to provide service or warranty work on products or goods sold in the State of Louisiana during the past five (5) years? If so, for each such person, state:
a. The person's name and address;
b. The inclusive dates retained; and
c. The nature of the person's duties.
RESPONSE TO INTERROGATORY NO. 2:
Defendant has not contracted directly with any entity to provide service or warranty work on products or goods sold in the State of Louisiana during the past five years. Vanstar Corporation, 17560 East Northville Trial, Northville, Michigan 48232, telephone (248)380-5669 and 150 Hembree Park Drive, # 100, Roswell, Georgia 30076(770)569-3120, has provided service and warranty work since 1992.
Subsequently, on October 7, 1999, Quantex amended its answer to this interrogatory as follows:
SUPPLEMENTAL RESPONSE TO INTEROGATORY NO 2.
On site service is handled by the manufacturer of the computer system sold by Quantex, Fountain Technologies, Inc., whose headquarters is in New Jersey. Fountain Technologies, Inc. has no office in Louisiana. While the on site service is Fountain's responsibility, Fountain does not directly perform any of the on site service on systems sold by Quantex to Louisiana residents.
Fountain includes an amount in the purchase price of each computer system sold to Quantex, which amount serves to reimburse Fountain for arranging on site service. Quantex does not pay for such on site service calls except for the amount paid to Fountain Technologies, Inc. as described above.
The company Fountain Technologies, Inc. used to provide such service was Van Star. In December, 1998, Fountain Technologies, Inc. entered into an agreement with Warranty Corporation of America which is the company they use for on site service today. Warranty Corporation of America is located at 3110 Crossing Park Road, Norcross, Georgia.