897 So.2d 621 (2004)
WABASH POWER EQUIPMENT COMPANY
v.
Lloyd LINDSEY, in His Official Capacity as West Feliciana Parish School Board Sales and Use Tax Collector, and West Feliciana Parish School Board.
No. 2003 CA 2196.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
*622 John M. Sharp, Ross A. Dooley, Baton Rouge, Counsel for Plaintiff/Appellant Wabash Power Equipment Company.
Frederick Mulhearn, Robert R. Rainer, Baton Rouge, Counsel for Defendant/Appellee West Feliciana Parish School Board.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this action to recover taxes paid under protest, plaintiff, Wabash Power Equipment Company (Wabash), appeals the trial court's granting of defendants', Lloyd Lindsey, in his official capacity as West Feliciana Parish School Board Sales and Use Tax Collector, and West Feliciana Parish School Board (collectively School Board), motion for partial summary judgment. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Wabash is an Illinois corporation specializing in the sale and rental of industrial boilers and related equipment. In 1997, Wabash purchased a boiler in Nebraska and held it for storage there until Wabash found a customer, an Alabama corporation. Wabash entered into a lease with the Alabama customer, and at the conclusion of the four-month lease period, the boiler was shipped from Alabama to a storage facility in Michigan. Thereafter, on August 19, 1999, Wabash entered into an eight-month lease with Crown Paper Company d/b/a *623 Crown Vantage (Crown), whereby Wabash leased to Crown the boiler and various ancillary equipment. The lease provided: the boiler would be located at Crown's facility in St. Francisville, Louisiana; access to and from the premises and its facilities would be permitted to Wabash's employees to inspect the equipment and show it to prospective customers; and the lease period was for eight months with an option to renew on a month-to-month basis, an option to renew for a twenty-four month period, and an option to purchase the boiler. Crown accepted delivery of the boiler in Saginaw, Michigan and shipped the boiler by railroad to Crown's paper mill in St. Francisville. Crown utilized the boiler for eight months and then on a month-to-month basis for an additional month until it malfunctioned. Crown then shipped the boiler back to Wabash.
On September 26, 2001, the School Board issued a proposed assessment letter of sales/use tax due for the period August 19, 1999, through the present in connection with the lease, assessing sales and use tax liability. On October 8, 2001, Wabash filed a formal protest with the School Board. Thereafter, a formal assessment letter was issued on April 9, 2002, assessing $41,133.75 for sales and use taxes due. Wabash paid under protest the amount assessed on June 14, 2002, and on July 17, 2002, filed a petition for recovery of tax paid under protest. In its petition, Wabash challenged the legality and/or sufficiency of the assessment of the taxes owed on several grounds: there was no "use" by Wabash; Wabash was not a dealer; the assessments were imposition of a tax on interstate commerce in contravention of La. R.S. 47:305(E); and the assessments were impositions of a tax in violation of the Commerce Clause of the United States Constitution.
On April 17, 2003, the School Board filed a motion for partial summary judgment on the issue of whether Wabash owed the School Board a use tax on the importation into West Feliciana Parish (the parish) of its boiler. On May 22, 2003, Wabash filed a cross motion for partial summary judgment on the same issue. Following a hearing on both motions, the trial court signed a judgment granting the School Board's motion for partial summary judgment and denying Wabash's motion, reserving to Wabash the right to an evidentiary hearing to contest the issue of cost price of the boiler on which the use tax assessment is based. Wabash now appeals that judgment asserting the following assignments of error: (1) the trial court erred in holding that the levy of the use tax did not violate the Dormant Commerce Clause of the United States Constitution, La. R.S. 47:305(E) and Sec. 5.305(5) of the West Feliciana Parish School Board Tax Ordinances (parish ordinances) and (2) the trial court erred in finding that Wabash was a "dealer" pursuant to Sec. 1.301 of the parish ordinances.

DISCUSSION

Taxability of Use of Boiler
The authority of political subdivisions to levy taxes is granted by Article 6 of the Louisiana Constitution. Article 6, Section 29 grants to local governmental subdivisions and school boards the authority to "levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and on sales of services as defined by law."
Additionally, La. R.S. 47:302[1] provides in pertinent part:

*624 A. There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein, the levy of said tax to be as follows
(1) At the rate of two per centum (2%) of the sales price of each item or article of tangible personal property when sold at retail in this state....
(2) At the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided there shall be no duplication of the tax.
B. There is hereby levied a tax upon the lease or rental within this state of each item or article of tangible personal property, as defined herein....
Further, La. R.S. 47:303(A)(1) provides that "[t]he tax imposed under La. R.S. 47:302 shall be collectible from all persons, as hereinafter defined, engaged as dealers." Further, La. R.S. 47:303(A)(2) provides that "[o]n all tangible personal property imported, or caused to be imported, from other states or foreign countries, and used by him, the dealer ... shall pay the tax imposed by this Chapter on all articles of tangible personal property so imported and used, the same as if the said articles had been sold at retail for use or consumption in this state." Louisiana Revised Statute 47:303(A)(3) also allows for a credit against the use tax imposed by the Chapter to taxpayers who have paid a similar tax upon the sale or use of the same tangible personal property in another state.
However, La. R.S. 47:305 provides for certain enumerated exclusions and exemptions from the above taxes. In particular, La. R.S. 47:305(E) provides in part:
It is not the intention of any taxing authority to levy a tax upon articles of tangible personal property imported into the state, or produced or manufactured in this state, for export; nor is it the intention of any taxing authority to levy a tax on bona fide interstate commerce.... It is, however, the intention of the taxing authorities to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state.
In the instant case, Wabash presents several arguments in support of its position that no use tax is owed to the School Board. First, Wabash contends that the assessment of the use tax at issue was error because there was no "use" of the boiler by Wabash in the parish. "Use" is defined in La. R.S. 47:301(18)(a)(ii), which provides in part that "[f]or purposes of the imposition of the sales and use tax levied by a political subdivision or school board, `use' shall mean and include the exercise of any right or power over tangible personal property incident to the ownership thereof." This court has consistently interpreted this definition of use as referring to the "ultimate use," and only those transactions, which result in ultimate use in this state are taxable. Shaw Group, Inc. v. Kennedy, 99-1871, p. 5 (La.App. 1st Cir.9/22/00), 767 So.2d 937, 939; Tigator v. *625 Police Jury of West Baton Rouge Parish, 94-1771, p. 11 (La.App. 1st Cir.5/5/95), 657 So.2d 221, 228, writs denied, 95-2126 and 2172 (La.11/17/95), 663 So.2d 712; Mobil Oil Corp. v. McNamara, 517 So.2d 278, 279-280 (La.App. 1st Cir.1987).
Wabash argues that there was no ultimate use of the boiler in the parish because the boiler was temporarily in the parish pursuant to the lease with Crown. As such, Wabash avers that in order for there to be a finding of ultimate use in the parish, the boiler would have to permanently be located in that parish. According to Wabash, because the boiler was not permanently located in the parish, it did not come to rest or become a part of the mass of property of the parish; and therefore, under La. R.S. 47:305(E), imposition of a use tax would be prohibited.
In looking at the issue of ultimate use, this court has consistently found that when the ultimate use of property is in interstate commerce, such use is not taxable. See Tigator, 94-1771 at p. 11, 657 So.2d at 229; Shaw; 99-1871 at p. 5, 767 So.2d at 939. However, the facts of this case do not suggest that the ultimate use of the boiler was for interstate commerce. First, according to Wabash's Vice President of Engineering, Robert H. Kavka, the boiler was brought to the parish for what he viewed as a long-term lease, which contained an option to renew and/or purchase. The boiler was installed in Crown's facility and was used for the initial eight-month lease term and for an additional month until it malfunctioned. Unlike the situation where tangible personal property is temporarily in the state and will ultimately be used outside of this state or in interstate commerce, the facts before us suggest that the ultimate use of the boiler was for it to be leased to Crown on a long-term basis for use in Crown's paper mill. Nothing about the nature of the boiler, which had to travel in pieces and be assembled and installed at Crown's facility for use in its paper mill, suggests that this was a temporary stop in its travel in interstate commerce. Further, we reject the notion that because the boiler was not used permanently in the parish that imposition of the use tax is impermissible. None of the jurisprudence suggests that ultimate use must be permanent and we decline to adopt such an interpretation.
Further, we find the boiler was ultimately used within the parish, came to rest within the parish, and became a part of the mass of property of the parish. In State v. Blasius, 290 U.S. 1, 9-10, 54 S.Ct. 34, 37, 78 L.Ed. 131 (1933), the Supreme Court stated the following regarding interstate commerce and the concepts of ultimate use and coming to rest:
If the interstate movement has not begun, the mere fact that such a movement is contemplated does not withdraw the property from the state's power to tax. If the interstate movement has begun, it may be regarded as continuing, so as to maintain the immunity of the property from state taxation, despite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement.... The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied.... Where property has come to rest within a state, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the state or for shipment elsewhere, as his interests dictate, it is deemed to be a part of the general mass of property within the state and is thus subject to its taxing power.
*626 In the instant case, there was no temporary interruption of interstate commerce. As stated above, the boiler was assembled and installed at Crown's facility where it remained in use for nine months until it malfunctioned. As such, the boiler came to rest in the parish and became a part of the mass of property of the parish. Therefore, we agree with the trial court and find that the importation of the boiler by Wabash into the parish for the purpose of leasing it to Crown is a taxable use as contemplated by the revised statutes and the parish ordinances. See Comdisco, Inc. v. Secretary, Louisiana Dept. of Revenue and Taxation, 93-1695 (La.App. 1st Cir.10/7/94), 647 So.2d 341, 344, writ denied, 95-0257 (La.3/30/95), 651 So.2d 837.
Additionally, Wabash asserts that it is not a "dealer" as that term is defined in the parish ordinances and the revised statutes. Louisiana Revised Statute 47:301(4) defines "dealer," in part, as:
[I]nclud[ing] every person who manufacturers or produces tangible personal property for sale at retail, for use, or consumption, or distribution, or for storage to be used or consumed in a taxing jurisdiction. "Dealer" is further defined to mean:
(a) Every person who imports, or causes to be imported, tangible personal property from any other state, foreign country, or other taxing jurisdiction for sale at retail, for use or consumption, or distribution, or for storage to be used or consumed in a taxing jurisdiction.
* * *
(d)(1) Any person who leases or rents tangible personal property for a consideration, permitting the use or possession of the said property without transferring title thereto.
Based on our finding above that Wabash's leasing of the boiler constituted a taxable use within the parish, we also find that Wabash meets the definition of dealer under La. R.S. 47:301(a) and therefore, pursuant to La. R.S. 47:303(A)(2) as outlined above, was required to pay the use tax assessed by the School Board.

Imposition of Use Tax and the Dormant Commerce Clause
Article I, § 8, cl. 3, of the United States Constitution, known as the Commerce Clause, authorizes Congress to regulate commerce among the several states. Despite this express grant of power to Congress, the United States Supreme Court has consistently held this language contains a further negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject. State v. Quantex Microsystems, Inc., 00-0307, p. 7 (La.App. 1st Cir.7/3/01), 809 So.2d 246, 250. In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Supreme Court set forth a four part test to assess the validity of state taxes under the Commerce Clause. Under the Complete Auto test, a state tax will be upheld in the face of a Commerce Clause challenge so long as the tax is applied to activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce,[2] and is fairly related to the services provided by the state. Complete Auto Transit, Inc., 430 U.S. at 279, 97 S.Ct. at 1079.
*627 First, Wabash contends that the imposition of the use tax in question violates the dormant Commerce Clause because Wabash does not have a substantial nexus with the taxing state. In determining what constitutes a substantial nexus, the Supreme Court in Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), found that if a vendor maintains a "physical presence" in the taxing state, the substantial nexus requirement is fulfilled. However, the crucial factor governing nexus, as outlined by the Supreme Court in Tyler Pipe Industries, Inc. v. Washington, 483 U.S. 232, 251, 107 S.Ct. 2810, 2821, 97 L.Ed.2d 199 (1987), is whether the activities performed in the taxing state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in the taxing state.
From our review of the record in this case, it appears that Wabash had a physical presence in the parish. Prior to the arrival of the boiler, employees of Wabash visited Crown's facility. Additionally, Robert Kavka was present at Crown's paper mill during installation and initial startup of the boiler. Further, the lease provided that employees of Wabash were to be allowed access to the boiler in order to provide needed maintenance and repairs. In addition to this physical presence, we also find that the use of the boiler by Wabash through its lease with Crown is significantly associated with Wabash's ability to establish and maintain a market in the state. The lease specifically provided that employees of Wabash be. allowed to go to Crown's facility to show the boiler to prospective customers. Therefore, we agree with the trial court and find that the substantial nexus requirement has been met.
Wabash next argues that the use tax is not fairly apportioned. The central purpose behind the apportionment requirement is to ensure that each state taxes only its fair share of an interstate transaction. Goldberg v. Sweet, 488 U.S. 252, 260-261, 109 S.Ct. 582, 589, 102 L.Ed.2d 607 (1989). To avoid multiple taxation, a tax upon interstate commerce must either be apportioned to relate the tax to the activity taking place within the taxing state, or it must allow for a credit for other similar taxes paid by the taxpayer in other jurisdictions. See Goldberg, 488 U.S. at 264, 109 S.Ct. at 582; General Motors Corp. v. City and County of Denver, 990 P.2d 59, 69 (Co.1999). Either method is equally suitable as a means of meeting the fair apportionment prong of the Complete Auto test. See Goldberg, 488 U.S. at 260-264, 109 S.Ct. at 588-590.
In the instant case, Wabash was assessed with only one tax on its use of the boiler in its lease with Crown. As outlined above, La. R.S. 47:303(A)(3) provides for a credit against any use tax assessed by the School Board for a similar sales or use tax paid in another state. Therefore, had Wabash paid a sales or use tax when it purchased the boiler in Nebraska or when it used the boiler in Alabama, it could claim a credit against the use tax assessed by the School Board.[3] Therefore, we find that because the tax allows for a credit, it is fairly apportioned in accordance with Goldberg. See also D.H. Holmes Co. v. McNamara, 486 U.S. 24, 31, 108 S.Ct. 1619, 1623-1624, 100 L.Ed.2d 21 (1988).
However, despite this credit provision, Wabash asserts the tax is still not *628 fairly apportioned because a lease tax has already been collected by the School Board from Crown and the School Board's attempt to collect a use tax on the same transaction results in impermissible double taxation. Double taxation occurs when one person or any one subject of taxation shall directly contribute twice to the same burden. State v. Triangle Drilling Co., 214 La. 273, 278 (La.1948), 37 So.2d 598, 599. (Emphasis added.) However, in the instant case, the use tax and the lease tax are separate taxes[4] paid by separate taxpayers. See La. R.S. 47:302(A) and (B). Wabash only paid a tax on its use of the boiler in its lease with Crown in the parish and Crown paid a lease tax. Wabash is correct that under the facts of this case, the lease transaction does give rise to two separate taxes. However, the taxes are assessed against two different taxpayers and Wabash is not contributing twice to the same burden. Though this statutory scheme may permit the School Board to obtain a double windfall in circumstances such as this, it does not amount to double taxation, which interferes with interstate commerce and violates the fair apportionment prong of the Complete Auto test.[5]
Finally, Wabash argues that the tax is not related to services provided by the state. In determining this issue, we are guided by D.H. Holmes Co. wherein the Supreme Court found factors such as fire and police protection, use of public roads, and provision of other civic services by the parish and state facilitated D.H. Holmes' sale of merchandise within the state and therefore the tax was fairly related. 486 U.S. at 32, 108 S.Ct. at 1624. In the instant case, Wabash enjoyed the same benefit of fire and police protection for its boiler while located in Crown's paper mill. Additionally, Wabash enjoyed the use of state and parish roads in transporting the boiler, set up, maintenance, and inspection by prospective customers. Therefore, we agree with the trial court and find that the tax is fairly related to benefits provided by the state and parish.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting the School Board's motion for partial summary judgment. All costs of this appeal are to be borne by the appellant, Wabash Power Equipment Company.
AFFIRMED.
NOTES
[1] Any reference to a statutory provision hereafter is also deemed to include reference to the corresponding parish ordinance.
[2] The subject of discrimination against interstate commerce is not at issue in the instant appeal. The parties have stipulated that the use tax assessed to Wabash does not discriminate against interstate commerce.
[3] The record does not indicate that any such sales or use tax was paid, or that a credit was claimed.
[4] Wabash also argues that the lease tax and use tax may be separate, but they are mutually exclusive. As such, it contends because Crown paid a lease tax, no use tax is owed by Wabash. However, the law as contained in La. R.S. 47:302(A) and (B) is clear that these are three separate forms of taxation. The sales and use tax are clearly delineated as complementary, in that the statute requires that there be no duplication of the tax. However, the statute does not contain such a prohibition against duplication in regard to the lease tax. Because the validity or constitutionality of these provisions is not an issue before us on appeal, we can only apply the law as it is clearly written and find that the lease and use tax are not mutually exclusive. We do acknowledge, however, that in 1999, La. R.S. 47:301(18)(a)(iii) was amended to gradually exclude leases from the definition of "use." These amendments, however, have no impact on the facts at issue in this case.
[5] We acknowledge that this windfall may be invalid on other grounds, but Wabash did not raise the validity of the statutory provisions or their constitutionality in the trial court and as such, any such argument will not be addressed on appeal.