Justice KENNEDY, concurring.
The opinion of the Court has my unqualified join and assent, for in my view it is complete and correct. It does seem appropriate, and indeed necessary, to add this separate statement concerning what may well be a serious, continuing injustice faced by Colorado and many other States.
Almost half a century ago, this Court determined that, under its Commerce Clause jurisprudence, States cannot require a business to collect use taxes-which are the equivalent of sales taxes for out-of-state purchases-if the business does not have a physical presence in the State. National Bellas Hess, Inc. v. Department of Revenue of Ill.,386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). Use taxes are still due, but under Bellas Hessthey must be collected from and paid by the customer, not the out-of-state seller. Id.,at 758, 87 S.Ct. 1389.
Twenty-five years later, the Court relied on stare decisisto reaffirm the physical presence requirement and to reject attempts to require a mail-order business to collect and pay use taxes. Quill Corp. v. North Dakota,504 U.S. 298, 311, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). This was despite the fact that under the more recent and refined test elaborated in Complete Auto Transit, Inc. v. Brady,430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), "contemporary Commerce Clause jurisprudence might not dictate the same result" as the Court had reached in Bellas Hess. Quill Corp.,504 U.S., at 311, 112 S.Ct. 1904. In other words, the Quillmajority acknowledged the prospect that its conclusion was wrong when the case was decided. Still, the Court determined vendors who had no physical presence in a State did not have the "substantial nexus with the taxing state" necessary to impose tax-collection duties under the Commerce Clause. Id.,at 311-313, 112 S.Ct. 1904. Three Justices concurred in the judgment, stating their votes to uphold the rule of Bellas Hesswere based on stare decisisalone. Id.,at 319, 112 S.Ct. 1904(SCALIA, J., joined by KENNEDY, J., and THOMAS, J., concurring in part and concurring in judgment). This further underscores the tenuous nature of that holding-a holding now inflicting extreme harm and unfairness on the States.
In Quill,the Court should have taken the opportunity to reevaluate Bellas Hessnot only in light of Complete Autobut also *1135 in view of the dramatic technological and social changes that had taken place in our increasingly interconnected economy. There is a powerful case to be made that a retailer doing extensive business within a State has a sufficiently "substantial nexus" to justify imposing some minor tax-collection duty, even if that business is done through mail or the Internet. After all, "interstate commerce may be required to pay its fair share of state taxes." D.H. Holmes Co. v. McNamara,486 U.S. 24, 31, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988). This argument has grown stronger, and the cause more urgent, with time. When the Court decided Quill,mail-order sales in the United States totaled $180 billion. 504 U.S., at 329, 112 S.Ct. 1904(White, J., concurring in part and dissenting in part). But in 1992, the Internet was in its infancy. By 2008, e-commerce sales alone totaled $3.16 trillion per year in the United States. App. 28.
Because of Quilland Bellas Hess,States have been unable to collect many of the taxes due on these purchases. California, for example, has estimated that it is able to collect only about 4% of the use taxes due on sales from out-of-state vendors. See California State Board of Equalization, Revenue Estimate: Electronic Commerce and Mail Order Sales, Rev. 8/13, p. 7 (2013) (Table 3). The result has been a startling revenue shortfall in many States, with concomitant unfairness to local retailers and their customers who do pay taxes at the register. The facts of this case exemplify that trend: Colorado's losses in 2012 are estimated to be around $170 million. See D. Bruce, W. Fox, & L. Luna, State and Local Government Sales Tax Revenue Losses from Electronic Commerce 11 (2009) (Table 5). States' education systems, healthcare services, and infrastructure are weakened as a result.
The Internet has caused far-reaching systemic and structural changes in the economy, and, indeed, in many other societal dimensions. Although online businesses may not have a physical presence in some States, the Web has, in many ways, brought the average American closer to most major retailers. A connection to a shopper's favorite store is a click away-regardless of how close or far the nearest storefront. See PricewaterhouseCoopers, Understanding How U.S. Online Shoppers Are Reshaping the Retail Experience 3 (Mar. 2012) (nearly 70% of American consumers shopped online in 2011). Today buyers have almost instant access to most retailers via cell phones, tablets, and laptops. As a result, a business may be present in a State in a meaningful way without that presence being physical in the traditional sense of the term.
Given these changes in technology and consumer sophistication, it is unwise to delay any longer a reconsideration of the Court's holding in Quill. A case questionable even when decided, Quillnow harms States to a degree far greater than could have been anticipated earlier. See Pearson v. Callahan,555 U.S. 223, 233, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(stare decisis weakened where "experience has pointed up the precedent's shortcomings"). It should be left in place only if a powerful showing can be made that its rationale is still correct.
The instant case does not raise this issue in a manner appropriate for the Court to address it. It does provide, however, the means to note the importance of reconsidering doubtful authority. The legal system should find an appropriate case for this Court to reexamine Quilland Bellas Hess.
Justice GINSBURG, with whom Justice BREYERjoins, concurring.*
I write separately to make two observations.
*1136 First, as the Court has observed, Congress designed the Tax Injunction Act not "to prevent federal-court interference with all aspects of state tax administration," Hibbs v. Winn,542 U.S. 88, 105, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004)(internal quotation marks omitted), but more modestly to stop litigants from using federal courts to circumvent States' "pay without delay, then sue for a refund" regimes. See id.,at 104-105, 124 S.Ct. 2276("[I]n enacting the [Tax Injunction Act], Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority."). This suit does not implicate that congressional objective. The Direct Marketing Association is not challenging its own or anyone else's tax liability or tax collection responsibilities. And the claim is not one likely to be pursued in a state refund action. A different question would be posed, however, by a suit to enjoin reporting obligations imposed on a taxpayer or tax collector, e.g.,an employer or an in-state retailer, litigation in lieu of a direct challenge to an "assessment," "levy," or "collection." The Court does not reach today the question whether the claims in such a suit, i.e.,claims suitable for a refund action, are barred by the Tax Injunction Act. On that understanding, I join the Court's opinion.
Second, the Court's decision in this case, I emphasize, is entirely consistent with our decision in Hibbs. The plaintiffs in Hibbssought to enjoin certain state tax credits. That suit, like the action here, did not directly challenge "acts of assessment, levy, and collection themselves," ante,at 1131. See Hibbs,542 U.S., at 96, 99-102, 124 S.Ct. 2276. Moreover, far from threatening to deplete the State's coffers, "the relief requested [in Hibbs] would [have] result[ed] in the state's receiving morefunds that could be used for the public benefit." Id., at 96, 124 S.Ct. 2276(internal quotation marks omitted; emphasis added). Even a suit that somewhat "inhibits" "assessment, levy, or collection," the Court holds today, falls outside the scope of the Tax Injunction Act. Ante,at 1133. That holding casts no shadow on Hibbs' conclusion that a suit further removed from the Act's "state-revenue-protective moorings," 542 U.S., at 106, 124 S.Ct. 2276, remains outside the Act's scope.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co.,200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Justice SOTOMAYOR joins this opinion with respect to the first observation.