**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 91-3393
_____

TUNICA-BILOXI TRIBE,
A Sovereign Indian Nation, et al.,

Plaintiffs-Appellants,

VERSUS

STATE OF LOUISIANA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

(June 24, 1992)

Before WISDOM, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The state of Louisiana imposes a retail sales tax on the off-reservation purchase of new vehicles by Indian tribes and tribal members.  Concluding that the imposition of the tax is proper, we affirm the district court's judgment in favor of the state.


I.

The state of Louisiana imposes a sales tax upon the retail sale of motor vehicles within the state.  La. R.S. 47:302(A). Payment of the tax is a prerequisite to registering and obtaining

a license plate for the vehicle.  Id. 47:303(B)(1).  The Tunica-Biloxi Tribe ("the Tribe")[1] purchased a van off-reservation with federal grant money for the exclusive use of the Tribal health department.  The van was taken to the reservation and has been permanently garaged there since then.  The state sought payment of the sales tax on the van, and the Tribe paid "under protest."[2]

Fred Gonzales, Jr., an enrolled member of the Tribe, also purchased a vehicle off-reservation; the vehicle was taken to the reservation and has been garaged there since then.  Larry Burgess, an enrolled member of the Chitimacha Tribe[3] who is employed by the Tunica-Biloxi Tribe, similarly purchased two vehicles off-reservation; these vehicles were taken to the Chitimacha reservation and have been garaged there since then.  Both Gonzales and Burgess paid the sales tax; according to the plaintiffs, neither "formally protested the payment of these taxes."[4]

---

[1]     The Tunica-Biloxi reservation is located in Avoyelles Parish, Louisiana, and consists of approximately 130 acres of land.  The status of the Tribe and the reservation was a disputed issue in the early stages of the litigation. It is now apparently undisputed, however, that the land was taken into trust on March 28, 1990, by the United States for the purpose of creating the Tunica-Biloxi reservation and that the Tribe is an Indian tribe with a governing body duly recognized by the Secretary of the Interior.

[2]     The Tribe states that it paid the tax "under protest" by including a letter with its payment.  It does not appear, however, that the Tribe availed itself of the state's statutory protest system.  See La. R.S. 47:1401 et seq.

[3]     The Chitimacha Tribe has a 261-acre reservation located in St. Mary's Parish, Louisiana.  This land was taken into trust by the United States for the benefit of that tribe in 1919.

The Chitimacha Tribe is not a party to this suit.  It was permitted to file an amicus curiae brief in the matter and to participate at oral argument.

[4]     The plaintiffs allege that the vehicles in question were "delivered" to the reservations.  It is unclear, however, whether the purchasers took possession of the vehicles at the dealership and brought them to the reservation or whether, instead, the dealers actually "delivered" the vehicles to the reservation. This ambiguity is not critical to our analysis.

The Tribe, Burgess, and Gonzales brought individual and official-capacity suits against various state officers in addition to suing the state. The two individual plaintiffs sought class certification and claimed to represent a class of tribal members who own vehicles that are taken to and garaged on the reservation. The plaintiffs sought (1) a declaration that the tax was invalid, (2) a refund of the tax they paid, and (3) an injunction compelling the state to refund sales tax payments to similarly-situated persons and/or organizations that had paid such tax within the last three years.

The district court dismissed the individual-capacity suits, refused to certify the class, held that it did not have jurisdiction over the claims by the individual plaintiffs by virtue of the Tax Injunction Act, 28 U.S.C. § 1341, and awarded summary judgment in favor of the state.

II.

The tax provision at issue in this case is La. R.S. 47:302(A), which provides as follows:

> There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property . . . .

According to the plaintiffs, the state has run afoul of Supreme Court jurisprudence by taxing the off-reservation sale of vehicles

3

taken to and garaged on the reservation.[5]

The Supreme Court has crafted a per se rule with regard to the "special area" of taxation of Indian tribes and members. See California v. Cabazon Band of Mission Indians, 480 U.S. 202, 215 n.17 (1987). The rule permits a state to tax lands, activities, and property "within the boundaries of the reservation" only where there has been a "cession of jurisdiction or other federal statutes permitting it." Id. (quoting Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148 (1973)). When such tribal activities are conducted "outside the reservation," however, the situation "present[s] different considerations." Mescalero, 411 U.S. at 148.

---

[5] Although we begin by addressing the merits, we note that the state has raised a question as to our jurisdiction to consider the individual plaintiffs' claims based upon the Tax Injunction Act, 28 U.S.C. § 1341, which provides that

> [t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

It is settled that the Tax Injunction Act does not bar our consideration of the claims of the Tribe. See Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 474-75 (1976) (act does not divest district court of jurisdiction over claims by Indian tribes to enjoin enforcement of state tax laws, as a more recent jurisdictional statute, 28 U.S.C. § 1362, gives district courts jurisdiction to hear "all civil actions, brought by any Indian tribe . . . wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States"). In Moe, the Court did not reach the question of whether there would be jurisdiction over the individual tribal members' challenge to the imposition of the state tax, noting that it could reach "all the substantive issues raised on appeal" by "deciding the claims of the Tribe alone." Id. at 475 n. 14. See also id. at 468 n. 7.

That is the case here as well. We therefore do not need to reach the jurisdictional question as to the individual tribal members. Nor do we need to reach the question of class certification. We do note, however, that there appears to be a serious question as to jurisdiction over the individual claims. See Osceola v. Florida Dep't of Revenue, 893 F.2d 1231 (11th Cir. 1990) (Tax Injunction Act bars consideration of individual tribal members' claims where state provides "plain, speedy and efficient remedy"), cert. denied, 111 S. Ct. 674 (1991); Assiniboine & Sioux Tribes v. Montana, 568 F. Supp. 269, 276-79 (D. Mont. 1983) (same). See also United States v. State Tax Comm'n, 505 F.2d 633, 638 (5th Cir. 1974) (noting that § 1362 "contains no general grant of jurisdiction for a suit merely because an Indian is a party").

4

Indeed, as the Court has stated, "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." Id. at 148-49. This principle applies to a state's tax laws. Id. at 149. Thus, there are two presumptions at work here: State taxation of on-reservation tribal activities is presumptively invalid; state taxation of off-reservation tribal activities is presumptively valid.

The plaintiffs first argue that their situation falls within the on-reservation presumption. They then argue that regardless of which presumption applies in this case, the tax in question is preempted by federal regulation (at least with regard to the purchase of the health service van).

A.

The plaintiffs contend that the imposition of the sales tax falls within the on-reservation presumption because the "taxable event" occurred when the vehicles were taken to and garaged on the reservation.[6] In making this argument, they rely upon three of the

---

[6]    At oral argument, counsel for the Chitimacha Tribe agreed with the plaintiffs that the tax was improper but disagreed with their theory that the permanent location of the vehicles was the key to the inquiry. The Chitimacha Tribe's theory is that the states are simply without any power to tax reserva-tion Indians. For this proposition, it cites the Court's recent statement that "{absent cession of jurisdiction or other federal statues permitting it,Z we have held, a State is without power to tax reservation lands and reserva-tions [sic] Indians." County of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation, 112 S. Ct. 683, 688 (1992) (quoting Mescalero, 411 U.S. at 148) (emphasis added).

The Court's statement plainly was made in the context of considering on-reservation activity, which was at issue in the case. See infra n.9. As noted above, the Court in Mescalero explicitly stated, 411 U.S. at 148-49,

Court's principal Indian tax law cases.

The first is Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463 (1976), which they claim is "substantially identical" to the case at bar. In Moe, the Court invalidated the imposition of an annual "personal property tax on personal property [motor vehicles] located within the reservation . . . . " Id. at 481 (emphasis added). The "tax event," then, was the ownership of a motor vehicle as of January 1 of each year, and that "event" occurred on-reservation. See Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 163 (1980) (describing holding in Moe).

Similarly, the situs of the tax event in the next case the plaintiffs cite SQ Colville SQ was on-reservation. In Colville, the Court invalidated the state's excise tax on motor vehicles imposed for the privilege of using such vehicles within the state. The Court held that the excise tax and the tax at issue in Moe were "quite similar":  "Each is denominated an excise tax for the {privilegeZ of using the covered vehicle in the State, each is assessed annually at a certain percentage of fair market value, and each is sought to be imposed upon vehicles own by the Tribe or its members and used both on and off the reservation." Id. at 162 (footnote omitted).

The state in Colville attempted to distinguish Moe, noting that while the tax event in Moe was the ownership of an on-

that reservation Indians going beyond the reservation generally have been subject to state tax law, and County of Yakima states nothing to the contrary.

6

reservation vehicle (i.e., a personal property tax), the event in the case at bar was "use within the State of the vehicle in question." Id. at 163. The Court rejected this distinction, noting that "[w]hile [the state] may well be free to levy a tax on the use outside the reservation of Indian-owned vehicles," it could not tax on-reservation use. Id. The tax in question was invalid because it taxed both on- and off-reservation activities, rather than apportioning between the two types of activity. Id. The key was that the tax event in both Moe and Colville was the use and ownership of a vehicle on the reservation SQ a tax event the state could not reach.

The third and final case upon which the plaintiffs rely is Ramah Navajo School Bd. v. N.M. Bureau of Revenue, 458 U.S. 832 (1982). There, the Court held that the state gross receipts tax was invalid where it was imposed upon a non-Indian contractor that built a school on reservation land. The Court noted that the tax was "intended to compensate the State for granting {the privilege of engaging in business.Z" Id. at 844 (citations to state statute omitted). According to the Court, the state failed to explain "the source of its power to levy such a tax in this case where the {privilege of doing businessZ on an Indian reservation is exclusively bestowed by the Federal Government." Id.

Again, as in Moe and Colville, the "taxable event" in Ramah was the on-reservation construction of a school SQ an activity beyond the taxing power of a state. Significantly, the Mescalero Court upheld the imposition of a similar gross receipts tax upon a

7

tribe-owned ski resort located off-reservation.  411 U.S. at 157-58.[7]

The instant case is unlike Moe, Colville, and Ramah in that the state of Louisiana has not reached into the reservation and taxed an on-reservation activity.[8]  It does not attempt to tax the privilege of using or owning motor vehicles on the reservation.  Rather, it taxes the retail sale of those vehicles off-reservation.  A tax on the sale of tangible property is not a tax on the property itself; rather, it is a tax on the sales transaction.[9]

The plaintiffs do not contest the fact that the sale took place off-reservation.  They contend, rather, that the "taxable incident was the delivery of the vehicle to its permanent garage on

---

[7]  In Mescalero the Court did invalidate the "compensating use tax imposed on the personalty installed in the construction of the ski lifts."  411 U.S. at 158.  This holding, however, was based upon § 5 of the Indian Reorganization Act, which exempts "any lands . . . acquired" by Indian tribes from state taxation.  25 U.S.C. § 465.  The gross receipts tax was imposed on income from land, not on the land itself, and thus was valid.  Mescalero, 411 U.S. 157-58.  The personal property subject to the use tax had become "permanently attached to the realty" and thus was a tax on land.  Id. at 158.  The Court therefore held that the tax fell within the § 5 exemption.  Id. at 158-59.

[8]  See Osceola v. Florida Dep't of Revenue, 705 F. Supp. 1552, 1555 (S.D. Fla. 1989) (noting in dicta that taxation of off-reservation purchases falls within Mescalero's presumption of validity), aff'd on other grounds, 893 F.2d 1231 (11th Cir. 1990), cert. denied, 111 S. Ct. 674 (1991); Felix S. Cohen, Handbook of Federal Indian Law at 430 (1982) ("The reasoning of [Mescalero] seems to apply to other state business and consumption taxes, such as taxes on . . . sales . . . .").

[9]  See Sullivan v. United States, 395 U.S. 169, 175 (1969) ("A tax on the privilege of selling or buying property has long been recognized as distinct from a tax on the property itself.") (footnote omitted).  Cf. County of Yakima, 112 S. Ct. at 693 (tax upon sale of property is not tax on subject of that sale).

In County of Yakima, the county imposed an ad valorem tax on so-called "fee patented" land located on the reservation, as well as an excise tax on the sale of such land.  The Court held that "the General Allotment Act [24 Stat. 388, as amended, 25 U.S.C. § 331 et seq.] explicitly authorizes only {taxation of . . . landZ" by the state.  Thus, because "a tax upon the sale of property is not a tax upon the subject matter of that sale," 112 S. Ct. at 693 (citation omitted), the county could tax the fee-patented land (the ad valorem tax) but not the sale of that land (the excise tax).  Id. at 694.

Indian lands, not the transfer of possession taking place off-reservation "if the property in question is <u>not</u> permanently made a part of the Louisiana property mass, or if it has not somehow . . . affixed itself in the state on a long-term . . . ."  The plaintiffs, however, confuse the jurisprudence interpreting the state's use tax with that interpreting the sales tax.

As noted above, Louisiana assesses a sales tax on the "{sales price} of items sold in the state" such as the vehicles involved in this case.  <u>Pensacola Constr. Co. v. McNamara</u>, 558 So. 2d 231, 232 (La. 1990).[10]  The state also imposes a "use tax" at the same rate on out-of-state purchases of tangible property brought into Louisiana.  La. R.S. 47:302(A)(2).  The use tax "is designed to compensate the State for sales tax that is lost when goods are purchased out-of-state and brought for use into Louisiana," <u>D.H. Holmes Co. v. McNamara</u>, 486 U.S. 24, 27-28 (1988), and "to make all tangible property sold or used subject to a uniform tax burden regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax."  <u>Pensacola</u>, 558 So. 2d at 233.[11]

The "taxable moment" of such use tax is when the property has been withdrawn from interstate commerce and has become part of the mass of the property of the taxing state.  <u>McNamara v. D.H. Holmes</u>

---

[10]    According to state law, a sale "is considered to be perfect between the parties, <u>and the property is of right acquired to the purchaser</u> with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, <u>although the object has not been delivered</u> or the price paid." La. Civ. Code art. 2456 (emphasis added).

[11]    The state provides a credit against the use tax for sales taxes that already have been paid out-of-state.  La. R.S. 47:303(A).

<u>Co.</u>, 505 So. 2d 102, 105 (La. App.), <u>writ denied</u>, 506 So. 2d 1224 (1987), <u>aff'd</u>, 486 U.S. 24 (1988).[12]  The ultimate destination of the tangible property in question thus is important in the use tax context, as it provides the taxable nexus with the state.  By contrast, in the sales tax context, the ultimate destination of the property is not crucial,[13] as the sales transaction SQ the taxable event SQ provides the nexus with the state.  The plaintiffs' reliance upon use tax cases therefore is misplaced.[14]

---

[12]     The Court in <u>D.H. Holmes</u> noted that although it makes no difference for Commerce Clause purposes whether an item of tangible property is still in interstate commerce or, instead, has come to rest in a state, this distinction is "of some importance for other purposes (in determining, for instance, whether a {taxable momentZ has occurred . . . )."  486 U.S. at 31 (quoting the Louisiana court of appeal's decision).

[13]     The only circumstance in which the ultimate destination is important in the sales tax context is with regard to the "first use" exemption.  Louisiana law provides that "[t]here should be no sales or use tax due upon the sale at retail or use of tangible personal property . . . purchased within or imported into Louisiana for first use exclusively beyond the territorial limits of Louisiana."  La. R.S. 47:305.10(A).

     The plaintiffs do not claim that they would meet the requirements of Louisiana's first use exemption.  <u>See</u>, <u>e.g.</u>, <u>id.</u> 305:10(B)(1), (2), and (3)(a) (in order for first use exemption to apply, the purchaser must be "properly registered for sales and use tax purposes in the state of use and regularly reports and pays sales and use tax in such other state," "[t]he state in which the first use occurs grants on a reciprocal basis a similar exemption on purchases within that state for use in Louisiana," and "[t]he purchaser [must] obtain from [Louisiana] a certificate authorizing him to make the nontaxable purchases . . . .").  The plaintiffs, however, do contend that the state has discriminated against them in violation of the Equal Protection Clause in that it "has not afforded [them] even the <u>opportunity</u> of entering into" a reciprocal agreement with it.  This claim is wholly unsupported and thus without merit.

[14]     The plaintiffs contend that the state has conceded that the ultimate destination of the vehicle is determinative for imposition of the sales tax by virtue of its promulgation of Policy/Procedure Statement #49.3 ("PPS #49.3"), which provides the following:

     According to the Department of Revenue and Taxation, Motor Vehicle Audit Unit, for State sales/use tax purposes, a federally recognized Indian reservation is to be treated as if it were another state or foreign country.  This means that State sales/use taxes will <u>not</u> be collected on motor vehicles to be <u>domiciled *and used exclusively on a reservation</u>.  *Vehicles used on Louisiana highways and/or for which a Louisiana license plate is required will be subject to any applicable State sales/use tax.  Vehicles used exclusively on a reservation and/or for which a plate is not acquired will be exempt from State sales tax.

10

The plaintiffs' next argument focuses upon the purchase of the van for the tribal health service. Essentially, they argue that regardless of the situs of the taxable event (off- or on-reservation), the sales tax in this case is preempted by federal regulation. Relying upon Ramah, the plaintiffs assert that the federal regulation of Indian health care is so pervasive that it has left no room for the additional burden of the state sales tax.

The plaintiffs focus upon the following language in Ramah as support for their contention:

> Federal regulation of the construction and financing of Indian educational institutions is both comprehensive and pervasive. . . . The direction and supervision provided by the Federal Government for the construction of Indian schools leave no room for the additional burden sought to be imposed by the State through its taxation of the gross receipts . . . . This burden, although nominally falling on the non-Indian contractor, necessarily impedes the clearly expressed federal interest in promoting the "quality and quantity" of educational opportunities for

---

According to the plaintiffs, prior to January 12, 1989, the state did not collect sales taxes on vehicles "garaged on a reservation." On January 12, the state promulgated PPS #49.3 and began imposing the tax.

PPS #49.3 does not constitute a concession by the state that the ultimate destination of the vehicle determines the taxable event for sales tax purposes. As the state noted at oral argument, the only way in which the state can collect its sales tax on vehicles sold within the state is to refuse to issue a license plate to a vehicle owner who has not paid the tax. When a vehicle is not used on the highways of Louisiana, there is no need for a license plate to be issued. Thus, it is reasonable for the state to exempt from the sales tax those vehicles that are to be "used exclusively on a reservation . . . for which a plate is not acquired."

We therefore agree with the district court that "[i]f anything, Policy/Procedure Statement [#] 49.3 carves out a beneficial exception to Indians where they make purchases outside of Indian country" for exclusive use in Indian country. This exemption does not affect the state's power to tax off-reservation sales as a general matter. Therefore, because the plaintiffs do not contend that they use the vehicles in question exclusively on-reservation, they do not fall within the exemption of PPS #49.3.

11

> Indians by depleting the funds available for the con-
> struction of Indian schools.

458 U.S. at 839, 841-42 (footnote omitted).[15]  The plaintiffs argue that the state sales tax, at least insofar as it was collected from the Tribe on the purchase of the van, is preempted by the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450 et seq., and the Indian Health Care Improvement Act, 25 U.S.C. § 1601 et seq.  The plaintiffs point to the fact that the Tribe purchased the van with federal grant money; they argue that federal regulation of Indian health care is at least as pervasive as federal regulation of education.

While the argument has some superficial attractiveness, it is based upon a flawed reading of Ramah, in which the Court's analysis is premised on the fact that the state was seeking to regulate an on-reservation activity.  The Court remarked that the state could not explain the source of its power to tax the privilege of doing business "on an Indian reservation" when that power "is exclusively bestowed by the Federal Government."  458 U.S. at 837.  The state's only justification for the tax was that it "provide[d] services to [the non-Indian contractor] for its activities off the reservation."  Id. at 844.

Moreover, the fact that Indian health care is subject to pervasive federal regulation does not defeat the general principle

---

[15]    The Ramah Court did not employ Mescalero's on-reservation "presumption of invalidity"; presumably this is because the case did not involve state taxation of on-reservation activities of Indians but rather on-reservation activities of non-Indians.  In fact, the Ramah Court refused to create a presumption in this area, relying instead upon the traditional preemption analysis.  See 458 U.S. at 845-46.

12

of <u>Mescalero</u>, which requires "<u>express</u> federal law" in order for Indian tribes going off-reservation to be exempt from state taxation.  411 U.S. at 148-49 (emphasis added).  The plaintiffs point to no "express" federal exemption from a state's general sales tax.  Thus, like the Court in <u>Mescalero</u>, we refuse to imply an exemption for the Tribe's off-reservation activity.  <u>See</u> <u>Mescalero</u>, 411 U.S. at 157.

## V.

In sum, we find that the imposition of the Louisiana sales tax on the off-reservation purchase of vehicles does not violate Supreme Court authority and is not preempted by federal regulation.[16]  We therefore AFFIRM.

---

[16]    Because we find that the imposition of the tax was proper, we need not reach the issue of qualified immunity for the state officials.  We also agree with the district court that the plaintiffs' arguments that the imposition of the tax violates the right to travel, the Equal Protection Clause, substantive due process, the Commerce Clause, and the Indian Commerce Clause are unsupported and wholly without merit.