## TUNICA–BILOXI TRIBE OF INDIANS
### a sovereign Indian Nation

### v.

### Cynthia BRIDGES individually and in her official capacity as Secretary of the Department of Revenue of the State of Louisiana

### Parish of Avoyelles, a governmental subdivision of the State of Louisiana

### and

### Avoyelles Parish School Board, a governmental subdivision of the State of Louisiana

### No. CIV.A. 03–881–A.

United States District Court, M.D. Louisiana.

April 15, 2005.

---

**25.** Rec. Doc. No. 51.

Donald Juneau, Esq., Hammond, LA, for Plaintiffs.

Geneva Landrum, Esq., Barry Lee Kelly, Esq., Shorie T. Pierre, Esq., Baton Rouge, LA, for Cynthia Bridges.

James T. Lee, Esq., Bunkie, LA, for Parish of Avoyelles and Avoyelles, Parish School Board.

## RULING ON MOTION

PARKER, District Judge.

Before the court is a motion for preliminary injunction and a motion for leave to amend its motion for preliminary injunction by the plaintiff, Tunica–Biloxi Tribe of Indians. (docs. 7, 31). Also before the court is a motion to dismiss the plaintiff's motion to amend by the defendants, the Secretary of the Department of Revenue ("The State"), the Parish of Avoyelles, and the Avoyelles Parish School Board. (doc. 37, 40). All motions are opposed. The plaintiff alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1361 as an Indian tribe duly recognized by the Secretary of the Interior. Oral argument was heard on this motion on March 16, 2005.

## FACTS AND PROCEDURAL HISTORY

The plaintiff originally filed suit against Cynthia Bridges ("the State") in this court, "seeking to enjoin the unconstitutional levying and collection of state sales tax on enrolled individual tribe members", and "for equitable restitution of all monies illegally collected by the Louisiana Department of Revenue from these tribal members." The petition alleged that the State unfairly and illegally taxed some of the tribal members on their purchase of mobile homes. The State filed a motion to dismiss the claim on December 19, 2004 (doc. 3), urging, in part, that the State had already refunded this money and that the only money still owed was the money allo-

cated to the local taxing authorities. Taking note that no other taxing authorities were defendants in the suit, the court ordered that all necessary parties be joined under Fed.R.Civ.P. 19 within 30 days. In response to this order, the plaintiff filed an amended complaint, joining the Parish of Avoyelles and the Avoyelles Parish School Board as defendants. After denying the defendant's motion to dismiss (doc. 27), the court held a hearing on the preliminary injunction. The court now rules on this motion.

## ARGUMENTS

■ Whereas the original motion for preliminary injunction filed by the plaintiff involved the State's taxation on the sale of mobile homes to certain tribal members, this issue is no longer in dispute. The plaintiff Tribe has filed a "Motion for Leave to Amend and Supplement Motion for Preliminary Injunction" in which it seeks to substitute the object of the State's allegedly illegal taxation. Whereas the Tribe had previously contested the State's assessment of sales tax on mobile homes purchased by tribal members, they now contend that Tribe itself was illegally taxed on its purchase of a van for use in a tribal casino.[1] They argue that although the mobile home issue has been resolved with the defendants, the same issue exists in relation to the sales tax allocated to a van purchased by the Tribe.[2] The State opposes this motion and supports its own

motion to dismiss by reasserting several affirmative defenses. In the ruling of October 29, 2004, the court considered this issue at length and found that the State's assertions of immunity under the 11th Amendment and the Anti–Tax Injunction Act (28 U.S.C. § 1341) to be without merit.[3]

Finding no substantial changes in the nature of the plaintiff's claim as relating to the State's sovereign immunity or the anti-tax injunction act, the court will consider the complaint to be amended to include the issue of the legality of the State's taxation on the van purchased by the Tribe. At the hearing on this issue, the testimony of Raymond Bertalotto demonstrated that in acquiring the van for the tribe, he sent out the Tribe's required specifications to various automobile dealers to invite them to bid on the contract. A dealer in Lake Charles[4] was awarded the bid, and some employees of the dealership drove the vehicle from Lake Charles to the tribal lands. It is the Tribe's contention that the delivery from the dealership directly onto the tribal lands constituted a movement of goods in interstate commerce, thus excluding the sale from state taxation. Though the conveyance of the vehicle from Lake Charles to the tribal lands in Avoyelles Parish took place entirely within the territorial limits of Louisiana, the Tribe urges that the sale actually took place in interstate commerce because the vehicle was delivered in Indian country. In support of

1. As the issue involving the individual tribe members' purchase of mobile homes is no longer before the court, there is no need for the tribe to sue in *parens patriae*. Rather, it sues on its own behalf to enjoin the state from taxing its automobile purchase.

2. It is the Tribe's argument that because both mobile homes and automobiles are considered "vehicles" under Louisiana law, and the taxes for both are collected by the vehicle commissioner; that the issue of law before the court effectively remains the same.

3. In this ruling, the court found that the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), allows the Tribe to sue for an injunction of Cynthia Bridges. Additionally, the court ruled that the "instrumentalities exception" to the Anti–Tax Injunction Act allows a federally recognized Indian tribe to "bypass state procedures and remedies in invoking jurisdiction of the federal courts."

4. The tribal casino is located in Avoyelles Parish.

this theory, they cite a Louisiana state court decision in which the court held that the purchase of two airplanes outside of Louisiana for flying into and out of the state were not subject to Louisiana's "use tax" due to the fact that the aircraft were used primarily in interstate commerce. *See Shaw Group, Inc. v. Kennedy*, 767 So.2d 937, 939–940 (La.App. 1st Cir.2000).

## LAW AND DISCUSSION

Here, the Tribe seeks an injunction restraining the Secretary of Revenue "from interfering with the Tribe's inherent sovereign prerogative and right to raise revenue," and from "levying and collecting sales-taxes ... within Indian country for sales transactions occurring within Indian country."

The Supreme Court has crafted a per se rule with regard to the special areas of taxation of Indian tribes and members. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 215 n. 17, 107 S.Ct. 1083, 1091, 94 L.Ed.2d 244 (1987). The rule permits state taxation on Indian land only where there has been a "cession of jurisdiction or other federal statutes permitting it." *Id.* When such tribal activities are conducted off of the reservation, however, the situation is different. As the Supreme Court stated in *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973), "absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State."

In *Tunica–Biloxi Tribe v. State of Louisiana*, 964 F.2d 1536 (5th Cir.1992), a case involving the same parties as are represented in the instant litigation, the court addressed a virtually identical set of facts. In *Tunica–Biloxi*, a van was purchased by the Tribe's health department for its exclusive use. The van, was then taken directly from the dealership to the reservation where it was permanently "garaged". The court upheld the state's taxing authority holding that the "taxable event" occurred off-reservation. 964 F.2d at 1540–42. However, the plaintiff argues in memorandum that the situation contemplated in the 1993 case is different from the instant one due to "the fact that the vehicle in question was delivered to the Tribe off of the reservation, and the transaction was thus completed outside of Indian country." However, this does not appear to be the case. In the 1993 case, the Tribe alleged—as it does now—that the vehicles in question were "delivered" to the reservation, and that they had been garaged there since then. The court made note of this argument in the opinion and determined it to be superfluous, "whether the purchasers took possession of the vehicles at the dealership and brought them to the reservation or whether, instead, the dealers actually 'delivered' the vehicles to the reservation." *Id.* at 1537. Rather, the court analyzed when and where the "taxable event" occurred in deciding that "the state of Louisiana ha[d] not reached into the reservation and taxed an on-reservation activity," and therefore had not violated tribal sovereignty. *Id.* at 1540.[5]

---

5. In a supplemental brief, the plaintiff argues that the state's ability to tax has been preempted by the Indian Gaming Regulatory Act, 25 U.S.C. § 2701(4), and has cited as case law *Ramah Navajo School Board v. New Mexico Bureau of Revenue*, 458 U.S. 83, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982). This issue was also addressed in *Tunica–Biloxi*,

964 F.2d at 1542. There, the court said that a very similar argument was

   ... based upon a flawed reading of *Ramah*. The [Supreme Court] premised its analysis in *Ramah* on the fact that the state was seeking to regulate an on-reservation activity. The Court remarked that the state could not explain the source of its power to

La.R.S. 47:301(12) defines a sale (for tax purposes) as:

> any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration . . .

It is apparent from this language that either the "transfer of title or possession" constitutes a "sale" for purposes of Louisiana's Sales Tax statutes. The word "title", as used in this context, is best understood as being synonymous with "ownership."[6] *See Weaver v. Hailey,* 416 So.2d 311 (La. App. 3 Cir.1982). In Louisiana, a transfer of ownership occurs "as soon as the price is fixed, even though the thing sold is not yet delivered nor the price paid." La.Civ. Code art. 2456.[7] Here, testimony reveals that the Tribe sent its specifications out to dealerships in the area, and made an agreement with the Lake Charles dealership able to meet these specifications at the lowest price. When the dealership contacted the Tribe with the winning bid, both the price and the specifications for the vehicle were then agreed upon by the parties. It is at this moment that the sale of the vehicle for sales tax purposes was completed, such transfer occurring at the automobile dealership in Lake Charles, Louisiana.

Testimony at the hearing suggests that the van was delivered for inspection before it was accepted; and was thus subject to being returned to the seller if it did not meet the original specifications. During oral argument, the plaintiff urged that this right of inspection somehow altered when the "taxable event" occurred. This is clearly not the case. Louisiana law affords a buyer the right of inspection for a reasonable period of time after delivery. La. Civ.Code art. 2603.[8] This does not change when the sale is deemed to have taken place, or when the transfer of ownership occurs. In any event, this vehicle met specifications and was not returned.

The plaintiff next argues that since the vehicle is permanently garaged on tribal lands, that it should not be subject to taxation. It urges that because the van will be kept on its sovereign territory, that the van should be considered to permanently reside outside of Louisiana's taxing jurisdiction. The Tribe confuses a "use tax" with a "sales tax." Louisiana assesses a sales tax on items sold in the state. *Pensacola Constr. Co. v. McNamara,* 558 So.2d 231, 232 (La.1990). There is no requirement that the items sold in the state also be used or otherwise be permanently kept within the state's boundaries. The state also imposes a "use tax", at the

---

tax the privilege of doing business "on an indian reservation" when the power "is exclusively bestowed by the Federal Government." 964 F.2d at 1542 (internal citations omitted).

As is discussed fully *infra,* here the State's taxing activities took place solely off the reservation.

6. Because most items subject to sales tax do not have a written "title," the court understands the word in the less formal sense.

7. The court notes that according to Louisiana law, "Unless otherwise provided, the transfer of ownership takes place as between the parties by effect of the agreement and against third persons when the possession of the mov-

able is delivered to the transferee." La.Civ. Code art. 517. This article does nothing to change the court's analysis. The State, though a third party to the transaction, is not interested asserting its rights against the owner of the vehicle. Rather, it is interested the *transaction* that takes place between a buyer and a seller. For this purpose, the delivery of the vehicle is less relevant than when the agreement to buy and sell actually takes place.

8. La.Civ.Code art. 2604 expressly provides that "[the] buyer has a right to have a reasonable opportunity to inspect the things, even after delivery, for the purpose of ascertaining whether they conform to the contract."

same rate, on out-of-state purchases of tangible property brought into Louisiana. La.R.S. 47:302(A)(2). This tax is "designed to compensate the State for sales tax that is lost when goods are purchased out-of-state and brought for use into Louisiana." *D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 27–28, 108 S.Ct. 1619, 1621–22, 100 L.Ed.2d 21 (1988). "The ultimate destination of the tangible property in question thus is important in the use tax context, as it provides a tangible nexus with the state. By contrast, in the sales tax context, the ultimate destination of the property is not crucial, as the sales transaction—the taxable event—provides the nexus with the state." *Tunica–Biloxi,* 964 F.2d at 1541. The sale having taken place in Louisiana when the transfer of ownership occurred, it is clear that the van purchased by the Tribe should not be excluded from Louisiana sales-tax.[9]

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's "Motion for Leave to Amend and Supplement Motion for Preliminary Injunction" (doc. 31) is hereby **GRANTED**. The motions to dismiss by the defendants (docs. 37, 40) and the plaintiff's motion for preliminary injunction (doc. 7), are hereby **DENIED**.

---

**9.** Though the van will reside on tribal lands, the plaintiffs admit that the van is "to be used to convey patrons of the Paragon Casino & Resort on and off tribal lands."