**TUNICA BILOXI TRIBE OF INDIANS a sovereign Indian nation, et al.**

v.

**Cynthia BRIDGES individually and in her official capacity as Secretary of the Department of Revenue of the State of Louisiana, et al.**

No. CIV.A. 03–881–A.

United States District Court, M.D. Louisiana.

June 28, 2006.

David Charles Laborde, Esq., The Laborde Law Firm, LLC, Lafayette, Colette Routel, Esq., Vanya S. Hogen, Esq., Faegre & Benson, Minneapolis, MN, for Plaintiffs.

Geneva Landrum, Esq., Barry Lee Kelly, Esq., Shone T. Pierre, Esq., Louisiana Department of Revenue, Baton Rouge, LA, for Cynthia Bridges individually and in her official capacity as Secretary of the Department of Revenue of the State of Louisiana.

James T. Lee, Esq., Bunkie, LA, for Parish of Avoyelles and Avoyelles Parish School Board.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

John V. PARKER, District Judge.

**Background**

On April 15, 2005, the court denied the Tunica–Biloxi Tribe's motion for preliminary injunction (doc. 51). In its ruling, the court detailed the facts and procedural history of the case up to that point (including the shift in focus from mobile homes to the van) and concluded that the sale of the van was completed for tax purposes when the Tribe bought the van from Bolton

Ford, a Lake Charles dealership. At that moment, both the price and specifications for the vehicle were then agreed upon by the parties. Since the "taxable event" occurred off-reservation, the court concluded that the sale of the van should not be excluded from Louisiana sales tax.

Thereafter, the Tribe and the individual plaintiffs filed a notice of appeal (doc. 63). After the appeal was ultimately dismissed for want of prosecution (doc. 74), the court invited counsel to comment on what to do with merits of the case (doc. 75). The Secretary responded with a motion to dismiss and the individual plaintiffs responded with a motion for summary judgment, both of which were denied (doc. 87). Soon after, the individual plaintiffs' claims against all defendants were dismissed with prejudice since plaintiffs had received full refunds of sales taxes paid on their mobile homes (doc. 90).

A pretrial conference was held on March 21, 2006, during which the court instructed that, if counsel were able stipulate to an agreed statement of facts and authenticity/admissibility of additional exhibits, the matter would be submitted without a formal trial (doc. 104). They did so (doc. 114), as follows:

### Stipulation of Facts

1. Plaintiff Tunica–Biloxi Tribe of Louisiana is a federally recognized Indian tribe that enjoys a government-to-government relationship with the United States.

2. The Tribe operates under a Constitution approved by the Secretary of Interior under § 16 of the Indian Reorganization Act of 1934, *as amended,* Act of June 18, 1934, ch. 576, § 16, 48 Stat. 987, codified at 25 U.S.C. § 476, which became effective on January 1, 1999.

3. Defendant Cynthia Bridges is Secretary of the Department of Revenue of the State of Louisiana, and is charged, under La.R.S. 47:1501(A), with the enforcement and collection of all State taxes.

4. Defendant Parish of Avoyelles is a governmental subdivision of the State of Louisiana. Under La.R.S. 47:303(B)(3)(a), the Parish of Avoyelles is empowered to levy and collect a sales tax. In the case of motor vehicles and mobile homes, the Office of Motor Vehicles actually receives the tax monies and transfers them to the Parish of Avoyelles by agreement, under La.R.S. 47:303(B)(3)(b). The governing body of the Parish of Avoyelles is the Police Jury.

5. Defendant Avoyelles Parish School Board is a governmental subdivision of the State of Louisiana. Under La.R.S. 47:303(B)(3)(a), the Avoyelles School Board is empowered to levy and collect a sales tax. In the case of motor vehicles, the Office of Motor Vehicles actually receives the tax monies and transfers them to the Avoyelles Parish School Board by agreement, under La. R.S. 47:303(B)(3)(b). The governing body of the Avoyelles Parish School Board consists of nine members.

6. According to the April 20, 2006 affidavit of Raymond Bertalotto, the Tribe's Transportation Manager of its wholly owned enterprise, Paragon Casino & Resort, in or about October 2004, on behalf of the Tribe, Bertalotto sent out a written solicitation for bids by fax to at least two Louisiana car dealerships on a van the Tribe wished to purchase.

7. According to Bertalotto's affidavit, Paragon is located at 711 Paragon Place in Marksville, Louisiana, on the Tribe's reservation, and Bertalotto's office is in the casino.

8. Bertalotto states in his affidavit that he received bids in his office from three dealerships on the van: by fax

from Bolton Ford in Lake Charles, Louisiana, for $33,785 plus tax, title, and license; by fax from Southern Chevrolet in Alexandria, Louisiana, for $36,893 excluding tax, title, and license; and by personal delivery from LaMar Ford in Bunkie, Louisiana, for $39,767 plus tax, title, and license.

9. Bertalotto's affidavit also states that he reviewed the bids and called one of the dealerships, Bolton Ford in Lake Charles, Louisiana, to ask a few questions about its bid, and that the sales representative at Bolton Ford suggested that Bertalotto visit another casino to whom they had recently sold a similar van so he could take a look at it.

10. Bertalotto further states in his affidavit that after viewing the other van, he called Bolton Ford from his office on the reservation, agreed to pay $32,064 for the van, and ordered the van, contingent on inspection.

11. Bertalotto goes on to state in his affidavit that on December 22, 2004, anticipating imminent delivery of the fan to the Tribe's reservation, Bolton Ford prepared a bill of sale for the vehicle. No one from the Tribe or Paragon signed the bill of sale. The bill of sale was signed by Misti Rutherford of Bolton Ford.

12. According to Bertalotto's affidavit and supplemental affidavit of April 26, the Tribe, through Paragon, took delivery of the van on its reservation on December 28, 2004, after inspecting it to ensure it met the Tribe's specifications.

13. According to the supplemental Bertalotto affidavit and the affidavit of Kent Darbonne of Bolton Ford, Bertalotto hand-delivered a check for the purchase price to Darbonne while he was on the reservation to deliver the van.

14. In filing its February 23, 2005 "Motion by Plaintiff Tunica–Biloxi Tribe for Leave to Amend and Supplement Motion for Preliminary Injunction" with this court, the Tribe submitted, as an attachment, the affidavit of Chet Ferretto, who at that time was the Tribe's Senior Vice President and Assistant General Manager of Finance for Paragon. Ferretto's affidavit states that he authorized the purchase of the van, he issued a check payable to the order of Bolton Ford, and mailed the check to Bolton Ford's post-office address on December 22, 2004.

15. Ferretto's affidavit also states that an employee of Bolton Ford delivered the van to Paragon Casino & Resort on December 28, 2004, where it was taken into possession on behalf of the Tunica–Biloxi Tribe by Tony Pierite.

16. According to the affidavit of the Tribe's current controller, Derlyn Scott, at the request of the Tribe's attorney, she checked the Tribe's records to see when the check to Bolton Ford for the van had been issued. Scott states in her affidavit that the check was issued (printed) on December 27, 2004, and that no check was issued to Bolton Ford on December 22, 2004.

17. The Tribe, through Paragon, paid $2,876.14 in sales tax on the van, including $1,603.20 to the State and $1,272.94 to the Parish on June 17, 2005. The Office of Motor Vehicles, Vehicle Application lists the date of vehicle acquisition as December 22, 2004. That application is attested by Tony Pierite of the Tunica–Biloxi Tribe of Indians.

18. The Tribe, through Paragon, paid a license fee for the van and obtained

Louisiana license plates for the van on June 17, 2005.

19. According to the testimony of Ferretto at the hearing on the Tribe's motion for preliminary injunction, the Tribe has no mechanism for licensing or titling the vehicles it purchases.

20. Neither plaintiff nor defendants intend to file or rely on any affidavits or exhibits that are not referenced in this Stipulation or already in the record of this case.

The Tribe's essential argument is, of course, that the sale of the van was completed on-reservation and therefore is not subject to Louisiana sales tax on motor vehicles. According to the Uniform Pretrial Order dated March 14, 2006 (doc. 99), the Tribe seeks a refund of the sales tax paid on the van, and declaratory and injunctive relief.

## Conclusions of Law

### Site of the Sale

■ The critical question at this stage of the litigation is whether the sale of the van occurred on the Tribe's reservation or whether it took place at Bolton Ford in Lake Charles. For tax purposes, a "sale" is defined as "any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration . . . ." La. R.S. 47:301(12). The court has previously concluded that "[t]he word 'title,' as used in this context, is best understood as being synonymous with 'ownership.'" *Tunica–Biloxi Tribe of Indians v. Bridges*, 365 F.Supp.2d 782, 786 (M.D.La.2005).[1] Therefore, a tax "sale" is perfected upon the earliest of the transfer of ownership or the transfer of possession. Since "[t]he jurisprudence of Louisiana is quite clear

that the sale of a motor vehicle is governed by the articles in the Louisiana Civil Code relating to the sale of movables," *Biggs v. Prewitt*, 669 So.2d 441, 443 (La.App. 1 Cir.1995), *writ denied*, 674 So.2d 264 (La. 1996), the court notes that a transfer of ownership occurs "as soon as the price is fixed, even though the thing sold is not yet delivered nor the price paid." La.Civ. Code art. 2456.

■ Mr. Bertalotto sent out a written solicitation for bids by fax to at least two Louisiana car dealerships, including Bolton Ford in Lake Charles. The Tribe concedes that the solicitation of bids was not an offer, but rather, an invitation for dealerships to make offers to the Tribe. Bolton Ford responded in kind and "offered"—by fax—to sell a van to the Tribe. Bertalotto called Bolton Ford in Lake Charles from his office on the reservation and agreed to pay $32,064 for the van.

The court cannot but comment upon how unhelpful the reply brief on behalf of defendant was to the court. In that brief, the State abandons all prior positions and advances the notion that the sale of a motor vehicle is not complete "until the [S]tate of Louisiana actually issues a paper title" (doc. 117, p. 3). In addition to a radical change in legal position by the State, that assertion contradicts established Louisiana law:

> The jurisprudence of this state does not require that the certificate of title to a vehicle be transferred in order for the sale to be a valid one. *Wright v. Barnes*, 541 So.2d 977 (La.App. 2d Cir. 1989); *Shanks v. Callahan*, 232 So.2d 306, 308 (La.App. 1st Cir.1969). Furthermore, sale of a vehicle is not affected by non-compliance with the Vehicle Certificate of Title Law, LSA–R.S.

---

1. As the Tribe points out, this conclusion is supported by the fact that the sales tax on a vehicle must be paid before a certificate of

title can be issued. Implicit is that a taxable sale occurs before title is issued.

32:701–738.  *Wright,* 541 So.2d 977; *Sherman,* 413 So.2d at 646. Neither does the law require that an agreement to sell a motor vehicle be notarized or even reduced to writing.  *See Maloney v. State Farm Ins. Co.,* 583 So.2d 12 (La. App. 4th Cir.), *writs denied,* 586 So.2d 544, 589 So.2d 1058 (1991).

*Biggs,* 669 So.2d at 443.

█ "The law in Louisiana is clear that absent contrary intent by the parties, a contract is considered executed at the place where the offer is accepted or where the last act necessary to a meeting of the minds or to completing the contract is performed."  *Aetna Ins. Co. v. Naquin,* 478 So.2d 1352, 1354 (La.App. 5 Cir.1985). Bertalotto accepted Bolton Ford's offer from the reservation (and ultimately accepted delivery on the reservation), but the "last act necessary" was for Bolton Ford itself *to receive* the acceptance of its offer.  An acceptance means nothing unless it is properly communicated to the offeror.[2]  A "meeting of the minds" cannot occur unless both minds are "on the same wavelength" and communication between them is required to accomplish this.  Once the acceptance was received by the seller in Lake Charles, the thing, price, and consent all converged and the sale was perfected.  The sale having taken place in Lake Charles, the tax on the van was proper but for the Tribe's new argument regarding inspection by the buyer.

**Inspection by the Buyer**

█ It is undisputed that Bertalotto ordered the van "contingent on inspection."

Therefore, the Tribe argues the applicability of La.Civ.Code art. 2460, which reads as follows: "When the buyer has reserved the view or trial of the thing, ownership is not transferred from the seller to the buyer until the latter gives his approval of the thing."  The comments to Article 2460 advise that the situation contemplated by the article "must be distinguished from the buyer's right to inspect things delivered by the seller in performance of a contract of sale.  The [view or trial] is incidental to a special kind of sale where the transfer of ownership depends on approval by the buyer.  The [usual sale] is the buyer's right to check whether the seller has complied with the contract."

Pertinent to this issue are La.Civ.Code arts. 2604 and 2605.  Article 2604 provides that "[t]he buyer has a right to have a reasonable opportunity to inspect the things, even after delivery, for the purpose of ascertaining whether they conform to the contract."  Article 2605 adds, in part, that "[a] buyer may reject nonconforming things within a reasonable time.  The buyer must give reasonable notice to the seller to make the rejection effective."

Thus, under general sales law, the Tribe had the right to inspect the van even after it was delivered to the reservation and to reject it if it did not meet the Tribe's specifications.  The Tribe, as buyer, had that right even without specifically noting that the sale would be "contingent on inspection."  The exercise of that right does not bear upon the transfer of ownership of the thing under Article 2456 because at the

**2.**  The Tribe cites *Williams v. Travelers Ins. Co. of Hartford, Conn.,* 19 So.2d 586, 588 (La. App.1945), where the court quoted from the Corpus Juris Secundum that "where a contract is made by telephone, it is regarded as made at the place from which the accepting party speaks."  The court finds little application for this bit of dicta, particularly since the *Williams* court cautioned that the location of the accepting party is but one factor to be considered since the intention of the parties is of primary importance.  It is also noteworthy that the court ultimately concluded that the parties had intended to have their employment contract entered into in Louisiana, notwithstanding the fact that plaintiff had accepted Louisiana employment via telephone while in South Carolina.

time of delivery of the van, there already was "agreement on the thing and the price [was] fixed . . . ." The court therefore concludes that this was not a "special kind of sale." Rather, Bertalotto's "inspection" is more appropriately classified as an exercise of any buyer's right of inspection following any sale under Article 2604.

Ownership was transferred at the moment the Tribe and Bolton Ford agreed upon the thing and the price. That moment occurred in Lake Charles, not on the reservation. Therefore, the sales tax was lawfully imposed on the transaction.

For the foregoing reasons, there shall be judgment herein in favor of defendants and against plaintiff, dismissing this action.